IN THE TAX COURT OF THE
STATE OF OREGON

Hugh Richard WHITE
and Elizabeth Busch White

*v.*

DEPARTMENT OF REVENUE

(TC 4085)

Robert J. Gunn, Salem, represented Plaintiffs (tax-payers).

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented Defendant (department).

Decision for Defendant rendered May 20, 1998.

### CARL N. BYERS, Judge.

Plaintiffs (taxpayers) appeal assessments of additional income taxes for the years 1988 through 1990. The assessments arose out of the Department of Revenue's (department) finding that Hugh Richard White (Mr. White) was domiciled in Oregon during those years. Taxpayers claim

that during the years at issue, Mr. White was domiciled in Washington, D.C. The parties have stipulated to written exhibits, and the court heard the testimony of witnesses.

## FACTS

Mr. White was born and raised in Washington, D.C. During his senior year in high school, 1961, he joined the Naval Reserve Officer Training Corps, serving that year and all four years of college. Upon graduation, he became a naval officer and served on active duty for a number of years. In 1968, taxpayers were married while Mr. White was stationed in California. In 1971 Mr. White left active duty with the Navy and taxpayers moved to Oregon. Mrs. White obtained a job teaching school, and Mr. White went to graduate school at Oregon State University. In 1973 their daughter was born. From 1975 to 1980, Mr. White worked for Truax Oil in Salem.

However, Mr. White testified that he is, "navy, through and through," thus he remained active in the reserves. In 1980 he accepted a special four-year assignment in San Diego. Once again on active duty, he was quickly promoted to Commander and selected as the Director of Training. However, the law prevented him from serving more than four years active duty and he therefore returned to Oregon. In 1986 the Chief of the Naval Reserve personally telephoned him and asked him to serve on a Presidential Commission. By that time, he had 10 years of active duty and wanted to serve 10 more so he would qualify for a pension and a number of other significant benefits. He accepted the assignment and, in January 1987, returned to active duty in Washington, D.C. Within two months, he was promoted to Captain and was on a career track for Flag Rank.

During his time in Washington, D.C., Mr. White would return to Oregon on long weekends to, as he put it, "tend to business." He maintained various partnerships which, although not especially active, apparently needed some attention. He testified that the presence of his family was not a factor in his trips to Oregon. Mr. White moved his personal belongings to Washington, D.C., and purchased a co-op apartment there. The apartment was limited to one occupant. Although he retained his Oregon driver license, it was of no use because he did not take either of his two cars with him. He also was not registered to vote anywhere during

this time. He renewed his church membership and attendance in Washington, D.C., and joined two service-related organizations.

Time and the change of world forces worked against Mr. White's career plan. The federal government made significant reductions in the armed forces to such an extent that by October 1992, instead of being selected for promotion as he had hoped, he was selected for early retirement. He testified that he was unable to find a job in the Washington, D.C., area and therefore returned to Oregon. There is no question that Mr. White was domiciled in Oregon prior to 1986 or that he has been domiciled in Oregon since 1992.

## ISSUE

Did Mr. White change his domicile to Washington, D.C., in 1987?

## ANALYSIS

■ There are many cases dealing with the concept of domicile, all of which apply the common-law notion that domicile constitutes that jurisdiction or place to which the person intends to return whenever he is absent therefrom. The issue in this case does not address the concept of domicile but what is necessary to change one's domicile. Generally, three elements are necessary: (1) the person must establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile. *Reed's Will*, 48 Or 500, 87 P 763 (1906). Clearly Mr. White established a residence in Washington, D.C. However, the court must determine whether he formed an intent to abandon his old domicile and to acquire a new one.

If Mr. White spoke accurately in his testimony, he is missing that piece of mental equipment labeled "domiciliary intent." As a navyman, his testimony indicated that his only intent with respect to his physical location was his duty station. Like the career soldier whose bunk is his home, Mr. White had no intent with regard to a future location other than what the Navy might order.

■■ This situation is not so extraordinary, and perhaps that is why the law looks to objective conduct. The law deduces an intent or mental state-of-mind from the person's

conduct, no matter how subconscious it might be. Because litigation usually occurs after the fact, the court may reasonably look first to the question of whether the individual did return to his place of domicile. Here, Mr. White returned to Oregon after leaving the Navy in 1992. He returned to his wife, home, cars, and other indicia of domicile in Oregon just as he did after serving in San Diego for four years.

Did Mr. White do anything evidencing an intent to establish a new domicile in Washington, D.C.? It is true that he purchased an apartment there, but it was an apartment whose occupancy was limited to one person. He testified that he knew his wife would not move to Washington, D.C. In trying to discern his intent, one must ask: Was his move to Washington, D.C., the end of the marriage? Did he intend to be forever separated from his wife? Or, was the purchase of a one occupant apartment evidence that he did not intend to remain in Washington, D.C., forever? The court notes that while stationed in San Diego, he purchased a condominium. There is no evidence to indicate that he claimed a change of domicile then, although he was there for approximately the same period of time.

The court recognizes that the relationship between the taxpayers may be unusual due to their respective commitments to their professions. However, in the absence of evidence that they intended to stay apart permanently, the marriage relationship is evidence that sometime in the future they intended to live in the same location. It is clear that they did not intend to be together in Washington, D.C. At the same time, Mrs. White remained in their home in Corvallis, which could accommodate more than one person.

Mr. White's church attendance and association memberships in Washington, D.C., are some evidence of intent, but they tend to be weak. Individuals in the military often attend church and join associations wherever they are stationed. Such conduct is not as determinative as actions which require the individual to make a conscious decision and declare their status. For example, registering to vote, filing income taxes as a resident, obtaining a fishing license or claiming resident tuition all require a conscious decision and declaration as to the individual's status. These kinds of

actions may be stronger evidence of the person's choice or state-of-mind. In this case, there is no evidence of the stronger kind because Mr. White did not file income tax returns as a resident of Washington, D.C., did not register to vote there, did not obtain any licenses there, or take any other action which would require him to consciously consider his status.

Did Mr. White's conduct evidence an intent to abandon his domicile in Oregon? The reason courts look to where taxpayer's have their home, car, boat, and other ties is because generally people who do not intend to return will sell or move these items. For example, one might reason that even if Mr. White did not need a car in Washington, D.C., there is no point in keeping one in Oregon if he never intended to return to here. And, even if he did not drive in Washington, D.C., there was little point in keeping his Oregon driver license because his military identification was a better form of identification.

The court observes that Mr. White's trips on long weekends to Oregon were not just for conducting business. He testified that his several partnership interests required virtually no involvement by him. The partnerships were either passive, winding down, or managed by others. He testified that sometimes he never made it to the house in Corvallis. Instead, his wife would meet him at the airport and they would spend the weekend at the coast and then he would fly back to Washington, D.C. Sunday night. This conduct indicates that he had reasons to return to Oregon that were not just business related. In fact, viewing this pattern one could have predicted that when Mr. White's tour-of-duty was over he would return to Oregon.

After considering all of the evidence, the court finds that Mr. White did not abandon his domicile in Oregon during the years 1988 through 1990 and therefore remained subject to the jurisdiction of the state of Oregon. Accordingly, the department's Opinion and Order No. 96-1891 must be sustained. Judgment will be entered accordingly. Costs to neither party.