IN THE OREGON TAX COURT
REGULAR DIVISION

Robert Wayne OTT
and Sandra D. Ott,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4559)

Alan Herson, Jacksonville, argued the cause for Plaintiffs (taxpayers).

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision for Defendant rendered August 22, 2002.

**HENRY C. BREITHAUPT, Judge.**

Plaintiffs (taxpayers) Robert W. Ott (Robert) and Sandra D. Ott (Sandra) appeal from a magistrate Decision that upheld the assessment of personal income taxes and interest against Robert for 1996, 1997, and 1998. Taxpayers claim that Robert was not a resident of Oregon for those years. Taxpayers also request that Defendant Department of Revenue (the department) adjust their 1998 returns to reflect a like-kind exchange rather than a gain on the sale of their vehicle. Trial on the merits was held in Medford, Oregon.

## FACTS

*Time Line*

Robert was born and lived primarily in California before moving to Renton, Washington, in 1990 to work for B & M Associates (B & M) at Boeing.[1] Sandra was born and raised in Oregon, where she lived when she met Robert. Taxpayers were married in December 1991, and lived in Renton, Washington.[2] Beginning in 1991, all vehicles owned or co-owned by Robert were registered in Oregon. Robert testified that the cars were registered in Oregon because that was Sandra's address and she needed to be a co-owner and provide credit support due to his bankruptcy in 1991.

---

[1] Rachel Schwenk of B & M testified that Robert's employment records indicate that he first worked for B & M from March 1988 to May 1990, and began again on July 1990.

[2] Robert testified that due to an accountant's mistake, Taxpayers filed 1991 part-year resident returns in Oregon because Sandra had been a part-year resident.

When Sandra learned that her sister had been diagnosed with cancer in 1992, she wanted to move to Oregon to be with her. Robert was able to obtain a temporary position in Portland, Oregon, and taxpayers moved to Wilsonville, Oregon, in November 1992. At that time, Robert obtained an Oregon Driver License (ODL).[3] When taxpayers married, Sandra owned a house in Keizer, Oregon, which she sold in 1992. According to testimony, taxpayers were wary of having to pay tax on the capital gain, so they jointly purchased another house in October 1993, with proceeds from the sale and additional money contributed by Robert. That house is located in Keizer at 1842 Jentif Court Northeast (the Keizer house).

Robert stated that he remained at the Portland position for 14 months, until February 1994, after which he returned to Renton, Washington, to work for B & M. While working for B & M, Robert rented an apartment at the Riviera Apartments in Renton, and testified that he intended to stay in Washington permanently. Robert testified that after losing his job in July 1994, he received unemployment benefits from the State of Washington and joined Sandra in Keizer.

Robert testified that in 1994, he registered his own engineering consulting firm in Oregon, "All Design Engineering."[4] According to testimony, for the years 1994 and 1995 Robert filed Oregon income tax returns as a part-year resident based on the fact that for each of those years, he spent part of the year in Washington and the rest of the year in Oregon. Sometime prior to 1994, taxpayers jointly established an Amway business known as S & W Ott Enterprises. Both the businesses used the Keizer house address, and fax and telephone numbers.

In October 1995, Robert began working for PDS, an engineering firm located in Seattle, Washington, for which he

---

[3] ORS 807.062 requires that "a person must be domiciled in or [a] resident of this state" to obtain an Oregon Driver License.

[4] Although 1994 was the year provided in testimony, Defendant's Exhibits I, EE, and FF appear to indicate that the business was registered in 1998. On a residency audit questionnaire, Robert noted that he worked for "All Design Engineering" in 1995.

was sent to California for three months. Soon after taking the job, however, Sandra's sister died, so he postponed going to California for one week. According to testimony, sometime before the death of her sister, Sandra had taken a part-time job as an administrative assistant through a University of Oregon grant program aimed at helping disabled people enter the workforce. Wanting to complete the program, Sandra remained in Keizer.

Robert testified that he quit his PDS job and returned from California in December 1995.[5] At the end of December, Robert took a job in Vancouver, Washington, at Columbia Truck Parts. He testified that he rented a room at 14208 NE 73rd Street (the Vancouver room) from Dena Morgan, who later married his brother-in-law. According to his testimony, Robert furnished the Vancouver room with a bed, desk, chair, and television. When the department asked about the size of the room, Robert replied that he was not sure and could not estimate its size. Robert testified that he established permanent residence in Vancouver at that time. Unfortunately, when he arrived for work, he found that Columbia Truck Parts no longer needed his services. Robert testified that he looked for other work in Vancouver.

In January 1996, Robert was again employed by B & M to work at Boeing.[6] He rented another apartment at the Riviera Apartments in Renton, Washington, and signed a six-month rental agreement. That agreement contained a clause providing that he would not be liable on the rental lease if he were transferred as a result of his job. Robert testified that he seldom stayed at the Keizer house, visiting only to make general repairs. Instead, he testified that Sandra regularly went to visit him in Washington, even for most of the holidays, over which he continued to work. Although he

---

[5] Testimony referred to an exhibit of a resume prepared by Robert at the end of December 1995 using the Keizer house address; however, the only resume in the exhibits appears to cover Robert's career through 1999 and utilizes the address of the room in Vancouver.

[6] Robert's testimony and the Stipulated Facts indicate that the job began in January 1996. The rental agreement clearly states that the Riviera apartment was rented in January 1996; however, the testimony by Rachel Schwenk as to Robert's employment record indicates that the position for B & M did not begin until July 1996.

was not sure how much time he spent in Oregon, he testified that it was less than 30 days each year during the years 1996, 1997, and 1998. Robert testified that he did not obtain a Washington Driver License during this time because Washington charges a fine when a person's driver license is not from the same state as a person's vehicle registration, and Robert's vehicles were registered in Oregon. He testified that he could not register his vehicles in Washington, however, because they were titled in Sandra's name.

Even while Robert was not working in Vancouver, he stated that he continued to rent the room. He testified that the rent varied from $10 to $150 per month, depending on how often he stayed in the room. The rent included all utilities and cable. He did not have telephone service in his room. Robert testified that he and Sandra would often meet in Vancouver to exchange cars, get the bills, and pay the rent, which was paid in cash. He testified that he always considered Vancouver his permanent address.

While in Renton, Robert paid for the utilities and cable television at the apartment. He obtained a library card and registered to vote, though he testified that he did not ever vote in Washington. Robert stated that he joined the Fraternal Order of the Eagles in 1996, but his membership lapsed at some point. In addition, Robert testified that he was active in the Veterans of Foreign Wars as a Junior Vice Commander, attending the monthly meetings and volunteering weekly. Robert testified that he received $93 per week in per diem fee from Boeing from 1996 through 1998 because with his employer he took the position that his permanent home was in Vancouver, over 100 miles from the job site.

According to testimony, the grant program for which Sandra was working ended in late 1998, and she has not since been employed. Soon after, in January 1999, Robert's position with B & M ended and he testified that once again he received unemployment benefits from the State of Washington. Although he lived at the Renton apartment for three years, Robert testified that he considered it a temporary living situation only. Taxpayers timely filed Oregon income tax returns for 1996, 1997, and 1998, each indicating that

Sandra was a resident of Oregon and that Robert was a non-resident of Oregon. On each return, taxpayers identify the Keizer house as their address.

Robert testified that both Sandra's and his current permanent residence is in Vancouver, where he continues to rent the room. For the time being, however, Robert is staying in Gold Hill, Oregon, in their fifth-wheel trailer and Sandra is staying with him part of the time. Robert testified that they are in Gold Hill because he feels it is important to give Sandra some time to recoup due to the fact that both her mother and step-mother recently died. Robert testified that they would otherwise be living in Cape Canaveral, Florida, because he is very fond of that area.

*Voting Records*

Alan Davidson, County Clerk for the Marion County Elections Office, appeared by telephone. He testified that Robert W. Ott of the Keizer house address registered to vote in Marion County on March 25, 1994, and that the voting record shows 10 ballots cast between December 1994 and November 1998. Robert testified in response that he had registered to vote in Oregon in 1993 and could not have registered to vote on March 25, 1994, because he was working long days in Washington at that time and did not come to Oregon on that day. Robert also stated that he had not voted since 1992. As an explanation, Robert suggested that the record reflects the voting history of another Robert W. Ott[7] or that the county's voting record demonstrates voter fraud.

Alan Davidson explained that most people register to vote by mail and maintained that, in his experience, the possibility of voter fraud is highly unlikely with such regularity of voting history. He also testified that the voting record shows a February 2002 change of address to a house located on Madelyn Avenue in Salem. Robert stated that his step-daughter, Michelle Hansberry, lives at that address, however, he refuted that testimony and explained he had received a voter's registration card at the Madelyn Avenue

---

[7] Robert indicated that there were two to four other Robert W. Otts in the telephone book, but that he did not know any of them personally.

address, but that he had not reported a change of address to the elections office or requested a registration card.

Based on the foregoing evidence, the court finds that Robert was the person whose voting registration and record was established by Alan Davidson.

*Bank Records*

Coleen Wold, operations supervisor at the Keizer branch of Washington Mutual Bank, testified by telephone that taxpayers'[8] account was opened at the Wilsonville branch in 1993. Of the deposits made during 1996, 1997, and 1998, she stated that taxpayers' account history showed three were made in Vancouver. In reviewing the bank records, she testified that the number of deposits made in Washington were proportionate to those made in Oregon.

In response, Robert testified that Sandra made the Oregon deposits and that most checks over $1,000 were his paychecks.[9] He also explained that if he was too busy working to deposit his checks, he gave them to Sandra when she visited to deposit in Oregon. When asked whether Sandra's visits correlate to the frequency of deposits made in Oregon, Robert testified that he could not remember how often she visited.

The department questioned Robert on the number of checks regularly written by him in payment of goods, services, and charitable contributions in Oregon during the period at issue, for example, Keizer Feed Store, Mel's Stoves, Payless Drugstore, Keizer Cleaners, etc. Robert testified in response that Sandra was irresponsible with money and he did not trust her with the checkbook, so he wrote all the checks and either sent them to her or gave them to her when she visited him in Washington. Robert conceded, however, that Sandra had and used an ATM card for the account, a fact directly inconsistent with Robert's testimony as to his overall money management system and concerns.

---

[8] Also named on the account was Michelle Hansberry, Sandra's daughter, who is thus Robert's step-daughter.

[9] Robert testified that he received weekly paychecks.

*DMV Records*

Deana Hampton of the Oregon Department of Motor Vehicles, testified by telephone that Robert first applied for an ODL in December 1992, at which time he surrendered his Washington Driver License. She also testified that a requirement for obtaining an ODL is Oregon residency and that once Oregon residency ceases, the ODL should be surrendered to a person's new jurisdiction. After 1992, she testified that Robert requested a duplicate sticker with a change to the Keizer address in February 1994. She stated that the record shows he requested a renewal extension sticker in July 1996, a duplicate sticker in April 1998, and a license renewal sticker in July 2000, each with the Keizer address. Finally, she testified that her records also indicate that Robert requested a duplicate sticker with a change of address to Madelyn Avenue in Salem, where Robert's step-daughter lives. In response to Coleen Wold's testimony, Robert stated that he believed he was required to keep an ODL because his vehicles were registered in Oregon.

*Employer Records*

Rachel Schwenk, a payroll specialist at B & M Associates, testified by telephone that Robert's employment records and W-4 forms during the years at issue reflect the Keizer address and phone number, and that the Renton address and phone number are listed as his temporary contact information. Robert testified that he used the Keizer house address when completing the forms for emergency and regular contact information. He also stated that he used that address on his W-4 forms because he filed Oregon tax returns. In addition, Robert testified that he was instructed by B & M to leave the original address on record.

*The Department's Auditor*

Bruce Hale, auditor for the Oregon Department of Revenue, testified that his investigation into Robert's records and other information received from Robert led him to conclude Robert was a resident of Oregon during 1996, 1997, and 1998. He stated that in his opinion, taxpayers' records showed that Robert had more permanence at the home in Keizer during the years at issue.

## ANALYSIS

For income tax purposes, ORS 316.027(1)[10] defines "resident" as:

"(a)   An individual who is domiciled in this state unless the individual:

"(A)   Maintains no permanent place of abode in this state;

"(B)   Does maintain a permanent place of abode elsewhere; and

"(C)   Spends in the aggregate not more than 30 days in the taxable year in this state; or

"(b)   An individual who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate more than 200 days of the taxable year in this state unless the individual proves that the individual is in the state only for a temporary or transitory purpose."

If Robert was domiciled in Oregon during the years at issue, the court must determine whether he met all the elements of the exception in ORS 316.027(1)(a)(A)-(C). If Robert was not domiciled in Oregon, the court must determine whether his income is subject to tax by Oregon pursuant to ORS 316.027(b). Therefore, the first question for resolution is the domicile of Robert during the years at issue.

■      "Domicile," is defined by the Oregon Administrative Rules as "the place where an individual has his true, fixed, permanent home and principal establishment, and to which place he has the intention of returning whenever he is absent." OAR 150-316.027; *dela Rosa v. Dept. of Rev.*, 11 OTR 201, 203 (1989), *aff'd*, 313 Or 284, 832 P2d 1228 (1992).

■■      The distinction between a place of "residence" and "domicile" is that, although a person may have several places of residence, there can be only one legal domicile at one time. *dela Rosa*, 11 OTR at 203 (citation omitted). Domicile is not changed until a new domicile is established. *Davis v. Dept. of*

---

[10] All references to the Oregon Revised Statutes (ORS) and Oregon Administrative Rules (OAR) are to 1995 and 1997, which are identical as to the statutes referenced.

*Rev.*, 13 OTR 260, 264 (1995) (citing *In re Noyes' Estate*, 182 Or 1, 14-15, 185 P2d 555 (1947)). The determination of domicile, however, is difficult because it is so heavily steeped in the subjective view of the individual at issue. Due to the self-serving nature of statements of intent, heavy reliance is placed on an individual's overt acts to discern state of mind. *Hudspeth v. Dept. of Revenue*, 4 OTR 296 (1971).

The facts are that taxpayers established domicile in Oregon when they moved to Wilsonville in 1992. While Robert was working in Portland, taxpayers purchased the Keizer house, where they lived together until Robert resumed work in Renton, Washington, in 1994. When he became unemployed in July, Robert returned to live with Sandra in Keizer for the remainder of 1994 and the majority of 1995. During that time, Robert established two businesses out of his home.

■ In order to establish that his domicile changed for the years at issue, the evidence must show that Robert (1) specifically intended to abandon his Oregon domicile; (2) intended to acquire a specific new domicile; and (3) was actually and physically present at the new domicile. *In re Noyes'*, 182 Or at 14-15; OAR 150-316.027. When Robert went to work for B & M in 1996 and rented an apartment in Renton, he retained, and his wife remained in, his house in Oregon. He retained his ODL, the Oregon registration of his vehicles, his Oregon voter registration, his Oregon mailing address, the Oregon registration and principal location of his engineering business, and the Oregon principal location of his Amway business. For all three years at issue, Robert filed personal income tax returns in Oregon using the Keizer house address. In addition, the evidence submitted demonstrates a steady history of voting and of purchasing goods and services in Oregon.

Robert's Washington conduct, on the other hand, does not demonstrate an intent to establish his domicile in that state. Instead, his actions in Renton are impermanent in nature and easily changed. For example, Robert's library card, Washington voter registration, and association memberships are some evidence of intent, but they are weak. Taxpayers do not contend that Sandra ever changed her domicile from Oregon.

Robert concedes that he did not intend to establish a domiciliary location in Renton. Instead, he asserts that he established his domiciliary location in Vancouver. Whatever value that assertion had with his employer for per diem pay, it is not credible here, given that his only Vancouver contact was a rented room used sporadically and containing a small proportion of his personal belongings. Robert's domiciliary intentions are also revealed by the fact that he again returned to his wife and home in Oregon when his position with B & M ended in January 1999.

The court finds that Robert was domiciled in Oregon prior to 1996 and the preponderance of the evidence does not support taxpayers' contention that Robert abandoned his Oregon domicile before or during the years 1996, 1997, or 1998. Robert admits, indeed insists, that his Renton location was not the place he intended to return wherever absent. That leaves Vancouver as the only possible place of domicile other than Oregon. The objective facts supporting domicile in Oregon far outweigh those supporting Vancouver.

■    As a domiciliary of Oregon, Robert can avoid being a "resident" under ORS 316.027(1)(a) only if he meets all the requirements of that statutory subsection. One of those requirements is that Robert not have spent more than 30 days in the taxable year in the state. Taxpayers presented no evidence to support Robert's testimony that he spent less than 30 days in Oregon during each of the years in question. Inasmuch as the amount of time Robert spent in Oregon is not clearly established by the evidence, taxpayers do not meet all the elements of the exception to Oregon residency provided in ORS 316.027(1)(a)(A)-(B).[11]

Lastly, in auditing taxpayers' 1998 income tax returns, the department made an adjustment by disallowing a $14,707 loss on the sale of a vehicle and instead recognizing a gain of $4,057. Taxpayers claim, apparently for the first time in this Regular Division proceeding, that the department's adjustment was incorrect and request that this court

---

[11] It also appears that Robert maintained a permanent place of abode in Oregon during the years at issue, even though he may also have had a place of abode in Renton. That fact also disqualifies him from relief from resident status under the statute.

order an adjustment reflecting a like-kind exchange instead. *See generally* IRC § 1031. Even if taxpayers' claim may be made without first having been made in the Magistrate Division, taxpayers provided no evidence of a like-kind exchange in order to support an adjustment to their 1998 tax returns.

Accordingly, the Decision of the Magistrate Division is affirmed and Plaintiffs' personal income tax assessments for 1996, 1997, and 1998 are upheld. Costs to neither party.