DECISION
Plaintiff appeals Defendant's denial of his 2004 and 2005 amended part-year resident Oregon income tax returns.
A trial was held on April 23, 2010, in Salem, Oregon. Plaintiff Thomas W. Gorski (Gorski) appeared on his own behalf. Debbie Smith, Tax Auditor, represented Defendant.
 I. STATEMENT OF FACTS
Gorski first moved to Oregon in 1991. (Def's Ex M at 4.) Gorski is a commercial airline pilot, and has been flying for over 30 years. (Puff's Ex 2 at 1.) He worked as an on-demand pilot from 2004-2007. (Id.) Unlike scheduled airline pilots, on-demand airline pilots must be available on short notice. (Id. at 2) Additionally, on-demand airline pilots often must be willing to move to the location of their job. (Id. at 4-6) As such, Gorski lived in Texas from March 2004 through December of 2004, and Florida from January 2005 through October 2005. (Def's Ex N) In October of 2005, he returned to Oregon. (Id.)
Gorski became unemployed in 2004. (Def's Ex M at 4.) He moved to Texas in March 2004, seeking employment as a full-time, on-demand pilot. (Ptf's Ex 2 at 1.) He has stated that the position of on-demand pilot requires that the pilot "be immediately available for a trip, as a *Page 2 
condition of employment." (Id.) Furthermore, "full-time on-demand pilot jobs require [that] employees relocate to the base where operations are being conducted." (Id.) Although he relocated to Texas, he stated that he "thought [he] would be leaving El Paso soon after accepting employment there." (Def's Ex M at 4.)
Gorski has said that he left his church, his friends, his wife, and his community and social activities in Oregon. (Id.) Gorski's wife, Daryl Thomas (Thomas) remained in Oregon and lived at the Salem address. (Ptf's Ex 2 at 1.) However, Gorski was registered to vote in Oregon during 2004, and did not register to vote in Texas. (Def's Ex M at 4.) There is no evidence in the record that he voted via an absentee ballot during 2004. He retained an Oregon driver license through 2004. (Id.) Additionally, he had a vehicle registered in Oregon through 2004. (Id.)
While in Texas, he rented an unfurnished apartment at 312 E. Robinson Ave, El Paso, TX. (Def's Ex M at 4.) He lived in that apartment until December 2004, paying monthly rent. (Id.) Gorski stated that one of the reasons that he did not purchase a house in El Paso was the advice of a co-worker.[1]
(Ptf's Ex 8A at 3.) He attended church in El Paso. (Def's Ex M at 4.) Additionally, he had a bank account with an El Paso branch of Wells Fargo. (Def's Ex M at 2.) He also stated that he changed his Geico automobile insurance for his residence in Texas.
Gorski moved to Florida in 2005. (Def's Ex M at 7.) On August 23, 2005, more than eight months after originally moving to Florida, he acquired a Florida driver license. (Def's Ex Y.) His Florida driver license lists his address as the same Salem address. (Id.) At that time he had already moved to his West Palm Beach residence. (Def's Ex N.) He stated that he "believed [he] would remain in * * * Florida permanently, and that [his] wife Daryl would forever move out of Oregon, and live with [him.]" (Def's Ex P at 3.) *Page 3 
Gorski retained a cell phone with an Oregon area code while living in Texas and Florida. (Def's Ex P at 1.) He explained that phone number was registered to and maintained by Thomas. (Id. at 4.) He stated that it was more economically feasible for him to carry that additional line on Thomas' account. (Id.) He registered his vehicles in Florida, carried Florida automobile insurance, and obtained Florida license plates. (Id.)
On April 15, 2005, Gorski and Thomas jointly filed a 2004 married, full-year Oregon resident tax return. (Def's Ex A at 1.) That tax return resulted in tax due. (Id. at 2.) Gorski and Thomas listed their current mailing address as 811 Ewald S. Salem, OR, 97302 (the Salem address). (Id. at 1.) They included a payment by check with the return in the amount of $1,295.00. (Def's Ex B.) That check listed Gorski's address as the Salem address. (Id.) Gorski received a W-2 for the 2004 tax year from ATI Jet Nevada. (Ptf's Ex 8A at 14) That W-2 listed his mailing address as 312 E. Robinson, El Paso, TX. (Id.)
On October 11, 2006, Gorski and Thomas jointly filed a 2005 married, full-year Oregon resident tax return. (Def's Ex D at 1.) That return resulted in tax due. (Id. at 2.) Taxpayers included a payment with the return in the amount of $2,014.00. (Def's Ex E at 1.) Gorski sent the federal Internal Revenue Service (IRS) a letter explaining the reason for the delay in filing the return, stating he was out of the country from December 9, 2005 through May 30, 2006. (Def's Ex C.) In that letter, dated October 5, 2006, he still listed his address as the Salem address. He received a W-2 for 2005 from AeroMedic, LLC. (Def's Ex D at 6.) That W-2 gave his address as 14609 Airport Way, Clearwater, FL, 33762. (Id.) He also received a W-2 for 2005 from Evergreen Helicopters of Alaska Inc. (Id.) That W-2 lists his address as the Salem address. (Id.) *Page 4 
On April 20, 2007, Gorski and Thomas filed amended returns for tax years 2004 and 2005 for part-year Oregon residents, changing from married, filing jointly, to married, filing separately. (Def's Ex F, G at 1.) Those returns resulted in no income tax due.[2] (Id.)
On December 19, 2007, Defendant sent taxpayers a letter requesting additional information (Def's Ex H.) Gorski responded in a letter dated December 26, 2007, explaining that he moved out of Oregon on March 13, 2004 and returned on November 16, 2007. (Def's Ex I.) Gorski and Thomas subsequently filed a second amended return for 2004 and 2005 for part-year Oregon residents with status changed to married, filing jointly. (Def's Ex J, K at 1.)
On September 25, 2008, Defendant sent a residency questionnaire to Gorski and Thomas. (Def's Ex L.) Gorski replied to the residency questionnaire on October 7, 2008. (Def's Ex M.) He stated that he left Oregon in March 2004 and "did not inten[d] to return" until he "could establish a permanent financial and social center" in Oregon. (Id. at 1.)
 II. ISSUE
The issue presented in this case is whether Thomas W. Gorski was domiciled in Oregon during the 2004 and 2005 tax years.
 III. ANALYSIS
Oregon imposes a personal income tax "on the entire taxable income of every resident of this state." ORS 316.037(1).[3]
ORS 316.027(l)(a)(A) defines a "resident" as "[a]n individual who is domiciled in this state * * *."[4] Although ORS 316.027 defines the term "resident" in *Page 5 
terms of domicile, "[domicile] is not in a legal sense synonymous with `residence.'" Reed's Will (Reed's Will)48 Or 500, 504, 87 P 763 (1906). An individual can have multiple residences, but only one domicile. Zimmerman v. Zimmerman,175 Or 585, 591, 155 P2d 293 (1945).
Domicile is a common-law concept composed of two elements: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." delaRosa v. Dept. of Rev., 313 Or 284, 289, 832 P2d 1228 (1992).[5]
OAR 150-316.027(1)(a) defines "domicile" as "the place an individual considers to be the individual's true, fixed, permanent home" and "the place a person intends to return to after an absence."
Gorski does not argue that he was not a domiciliary of Oregon at one time. He contends that, in 2004, he changed his domicile from Oregon to Texas and, in 2005, from Texas to Florida. Thus, the court must determine if Gorski changed his domicile to Texas in 2004 or, if not, then separately, if he changed his domicile to Florida in 2005.
Once a taxpayer has established domicile in a state, that state remains the domicile of the taxpayer until the taxpayer establishes a new domicile. See Doyle v. Doyle,17 Or App 529, 532, 522 P2d 906 (1974). *Page 6 
To establish a new domicile, a taxpayer must: (1) "establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile."White v. Dept. of Rev. (White),14 OTR 319, 321 (1998) (citing Reed's Will, 48 Or at 508-09);see also OAR 150-316.027(1)(a). Gorski has the burden of proving by a preponderance of evidence that he was domiciled in Texas in 2004 and Florida in 2005. ORS 305.427.[6] Therefore Gorski must prove that he satisfied all three prongs of theWhite test for either or both of the 2004 or 2005 tax years.
A. Did Gorski establish domicile in Texas for the 2004 taxyear?
1. Residence in Texas
"[A] residence for purposes of the [White] test is simply an abode. * * * [A]n abode is any `physical building, structure, or vehicle in which the taxpayer lives and sleeps."Bleasdell v. Dept. of Rev. (Bleasdell),18 OTR-MD 354, 361 (2004); see also Ramsey v. Dept. of Rev.,7 OTR 478, 481 (1978) ("[Abode] signifies a building or shelter which is the dwelling place of a person."). There is no question that Gorski established a residence in Texas in 2004 for the purposes of the White test. He moved to Texas in March 2004 and rented an unfurnished apartment at 312 E. Robinson Ave., El Paso, TX. (Def's Ex M at 4.) He lived in that apartment until December 2004, paying monthly rent. (Def's Ex N.)
2. Intent to Abandon Oregon Domicile in 2004
Once Gorski had established his domicile in Oregon, to effect a change, he must have manifested the intent to abandon that Oregon domicile. See White, 14 OTR at 321. The second *Page 7 
prong of the White test is based on an individual's intent, which is "heavily steeped in the subjective view of the individual[.]" Ott v. Dept. of Rev. (Ott),16 OTR 102, 111 (2002). That creates the problem of determining the subjective intent of the individual in the past and courts will rely on objective evidence to determine that intent. Id.
(looking at the taxpayer's conduct); Sage v. Dept. of Rev.
(Sage), TC-MD 060574C, WL 1660764 at *7 (June 5, 2007).
Gorski was registered to vote in Oregon throughout 2004, although there is no evidence in the record that Gorski voted absentee. (Def's Ex M at 4.) He had an Oregon driver license throughout 2004. (Id.) Furthermore, he had Oregon vehicle registration through 2004. (Id.)
Gorski has provided conflicting explanations of his reasons for leaving Oregon in 2004. He stated at trial that he left Oregon for "a lack of a reason to be in Oregon." Alternatively, he has stated that the reason he left Oregon was to avoid "collecting a full term of unemployment insurance." (Ptf's Ex 5 at 1.) Previously, he stated in his response to Defendant's questionnaire that he "did not inten[d] to return to [his] family, until such time when [he] could establish a permanent financial and social center [in Oregon]." (Def's Ex M at 1.) Defendant argues that is evidence of Gorski's intent to retain his Oregon domicile. At trial, Gorski admitted the inconsistency. There is evidence on both sides of the issue, but it is Gorski's burden to present evidence to establish that he intended to abandon his Oregon domicile in 2004. Gorksi did not carry that burden.
3. Intent to Establish Texas Domicile in 2004
The third prong of the White test is perhaps the most important of the three prongs. As the Oregon Supreme Court stated inReed's Will:
 "To lose a domicile when once acquired, there must be an intention to do so. A mere change of the place of abode, however long continued, is not sufficient, unless the proper animus or intention is present. This intention, it is true, may be inferred from circumstances, and the residence may be of such a character and *Page 8 
accompanied by such indices of a permanent home that the law will apply to the facts a result contrary to the actual intention of the party. Thus one cannot make a permanent fixed commercial residence with all the surroundings of a permanent home in one place and a domicile in another by a mere mental act."
Reed's Will, 49 Or at 510. Gorski stated in his closing argument at trial that his FAA pilot's certificate listed his Texas address and that he doesn't "lie to the federal government."[7]
Gorski resided at the El Paso address for the purposes of theWhite test. However, residence, alone, is not enough to establish domicile in a new state. See Reed's Will,49 OR at 510 (quoting Bremer v. Freeman, 10 Moore, PC, 306, "A person may live 50 years in a place, and not acquire a domicile, for he may have had all the time an intention to return to his own country.")
Gorski did not register to vote in Texas. (Def's Ex M at 4.) He did not register his car in Texas, nor acquire a Texas driver license. (Id.) Gorski explained that when he first moved to Oregon in 1991, he kept his Connecticut registration until it expired. (Def's Ex P at 3.) He stated he had kept his Oregon registration while in Texas, "because it was expensive, and [he] felt it was unnecessary [to change.]" (Id.) He attended church at St. Patrick Cathedral, El Paso, Texas, as well as various social events while living in El Paso. (Def's Ex M at 3.)
Although social and religious connections to a new residence are evidence of intent to change domicile, they are not the only evidence. Much more powerful evidence includes "licenses as are ordinarily required of residents by the state of his new `home,'" such as "automobile licenses." Elwert v. Elwert
(Elwert), 196 Or 256, 269, 248 P2d 847 (1952). Further, "[f]ailure to perform the duties and avail oneself of the privilege of a citizen in the community of one's new residence constitutessignificant facts pointing to no change in domicil[e]." (Id.) (emphasis added). *Page 9 
Domicile is "the place an individual considers to be the individual's true, fixed, permanent home." OAR 150-316.027(1). Yet Gorski stated in his response to Defendant's questionnaire that he "thought [he] would be leaving El Paso soon after accepting employment there." (Def's Ex M at 4.) Again, although there is evidence on both sides, Gorski did not present sufficient evidence to the court for the court to find that he intended to establish a domicile in Texas. Gorski also did not establish that he intended to abandon his Oregon domicile. Therefore, the court finds that Gorski remained domiciled in Oregon in 2004.
B. Did Gorski establish domicile in Florida for the 2005 taxyear?
1. Residence in Florida
As stated above, "[a] residence for purposes of the [White] test is simply an abode." Bleasdell,18 OTR-MD at 361. There is no question that Gorski established a residence in Florida for the purposes of the White test in 2005. He moved to Clearwater, Florida in December 2004. (Ptf's Ex 8B at 2). In January 2005, he moved to Seminole, in February, he moved to St. Petersburg, and in July, he moved to West Palm Beach. (Id.) In October 2005 he returned to Oregon. (Id.) While in Florida, he was a resident for the purposes of the White test. He rented homes in both St. Petersburg and in West Palm Beach, as well as residences in Clearwater and Seminole. (Def's Ex M at 5.)
2. Intent to Abandon Oregon Domicile in 2005
As above, the question of whether Gorski intended to abandon his Oregon domicile in 2005 depends on objective evidence of his contemporaneous intent. Gorski retained a cell phone with an Oregon area code. (Def's Ex P at 1.) He explained that number was registered to and maintained by Thomas. (Id. at 4.) Gorski stated he believed it more economically feasible for him to carry that additional line on Thomas' account. (Id) His Florida driver license lists his *Page 10 
address as the Salem address. (Def's Ex Y.) He obtained that license on August 23, 2005. (Id.) At that time he had already moved to his West Palm Beach residence. (Def's Ex N.) He remained registered to vote in Oregon, but there is no evidence in the record that he voted absentee while in Florida. (Def's Ex M at 7.)
Although Gorski had ties to Oregon while living in Florida in 2005, "[l]ingering connections to Oregon have not prevented this court in past cases from concluding that a taxpayer effected a change in domicile." Brueske v. Dept. of Rev.
(Brueske), TC-MD 090020D, WL 724425 at *8 (Mar 3, 2010) (citing Hudspeth v. Dept. of Rev., 4 OTR 296, 299 (1971)). InBrueske, the taxpayer, "retained his Oregon driver license, his Oregon voter registration, and his Oregon address on [his LLC agreement] more as an oversight than as a conscious decision."Id.
Unlike the taxpayer in Brueske, Gorski changed his driver license, though not the address listed on the license, along with his registration and license plate. Like the taxpayer inBrueske, Gorski remained registered as an Oregon voter, but there is no evidence that he voted absentee while in Florida. Gorski has sought to explain in great detail why he felt he abandoned his Oregon domicile in 2005. He has provided explanations for the evidence presented by Defendant. (See e.g., Def's Ex P.) Defendant did not object to those explanations.
However, the taxpayer in Brueske had more lasting connections to his new residence in Arizona. In Brueske, the taxpayer had lived in Arizona from 1997 through the tax years at issue (2003, 2004, and 2005). Brueske, WL 724425 at *2-4. In 1997, the taxpayer rented a one-room apartment in Yuma, Arizona and remained there through 2001. Id. at *2. In 2001, the taxpayer purchased a two bedroom house in Yuma. Id. By 2003 the taxpayer "of his own volition" contacted the Arizona Department of Revenue and determined that he should file as an Arizona *Page 11 
resident. Id. at *8. The court found that the taxpayer's work had "firmly rooted" him in Arizona. Id
. at *11.
Unlike the taxpayer in Brueske, Gorski did not, "of his own volition," manifest the intent to sever ties to Oregon. Although Gorski acquired a Florida driver license, that license contained the Salem address. Gorski explained that at the time he acquired his Florida driver license, his landlord had asked him to vacate the residence. (Ptf's Ex 5 at 13.) However, he later provided evidence to the court contradicting that statement. His abode did not change until he returned to Oregon. (Ptf's Ex 8B at 2.)
Further, in Sage, the court determined that the taxpayer had never abandoned his Oregon domicile despite many ties to another state. Sage, 19 OTR-MD at 432-33. Notably, in Sage, the taxpayer asked his Washington employer to withhold Oregon income taxes throughout the tax years at issue. Id. at 435. None of Gorski's W-2 forms for the tax years 2004 or 2005 withhold amounts for state income tax. (See Def's Ex K at 7; see also Ptf's Ex 8A at 14-15.)
However, in 2005, while Gorski was living in Florida, Gorski and Thomas jointly filed a 2004 married, full-year Oregon resident tax return. (Def's Ex A 1.) On that return Gorski and Thomas listed their address as the Salem address. (Id.) Gorski argues that filing was an oversight. (Ptf's Ex 4 at 1.) That may be true. However, as stated above, "[f]ailure to perform the duties and avail oneself of the privilege of a citizen in the community of one's new residence constitutes significant facts pointing to no change in domicil." Elwert, 196 Or at 269. One such duty is to file an income tax return in the domicile of the taxpayer. Gorski and Thomas filed their tax returns in Oregon. Gorski has failed to provide sufficient evidence to prove that he contemporaneously intended to abandon his Oregon domicile. *Page 12 
3. Intent to Establish Florida Domicile in 2005
Gorski registered his vehicles in Florida, carried Florida automobile insurance, and obtained Florida license plates. (Def's Ex M at 5.) He obtained a Florida driver license, although he listed the Salem address. (Def's Ex P at 4.) He had a Florida checking account in the Washington Mutual St. Petersburg and West Palm Beach branches. (Def's Ex M at 5.) Gorski attended several churches while in Florida. (Id. at 6.) He joined a social organization in St. Petersburg dedicated to preserving Old Time Dance. (Id.) Furthermore, Gorski stated that he "believed [he] would remain in * * * Florida permanently, and that [his] wife Daryl would forever move out of Oregon, and live with [him.]" (Def's Ex P at 3.)
Gorski took many of the steps required to establish long-term residence in Florida, but establishing domicile requires more. A "[d]omicile is the place a person intends to return to after an absence." OAR 150-316.027(1)(1)(a). Gorski stated that he "did not inten[d] to return to [his] family, until such a time when [he] could establish a permanent financial and social center [in Oregon]." (Def's Ex M at 1.) Stated another way, Gorski intended to return to Oregon when his financial situation had cleared up. That statement by itself does not foreclose the possibility that Gorski changed his domicile. However, it directly contradicts Taxpayers' subsequent arguments. As the Supreme Court stated inElwert,
 "Self-serving declarations of the party securing the controverted decree have but little weight in a suit of this kind. `Declarations which tend to establish a domicile which is advantageous to the declarant are viewed with suspicion and if admitted at all are accorded but little weight * * *.' This is particularly true when the declarations of intention are made in view of a possibly contested domicil. Declarations of domicil may be met with evidence of contradictory acts and conduct happening after as well as before the date in question, if they throw light on the matter of intent and are reasonably contemporaneous to that date."
Elwert, 196 Or at 271. (internal citations omitted.) *Page 13 
Domicile requires objective evidence of thecontemporaneous intent to abandon the previous domicile.See Ott v. Dept. of Rev., 16 OTR at 111. Gorski filed as a full-time Oregon resident and did not amend his 2005 return until 2007. Subsequent realization that a taxpayer could have intended something entirely different is not contemporaneous intent. Gorski has failed to show that the 2005 return was in error. Contradictory explanations arising from later reflection are not objective evidence of contemporaneous intent.
 III. CONCLUSION
The court finds that Gorski did not carry the burden of proving that he was domiciled in Texas in 2004. Gorski failed to prove that he abandoned his Oregon domicile and established a new domicile in Texas. Although Gorski received a W-2 with the Texas address, Gorski stated that it was not his intention to remain in El Paso long after gaining employment. (Def's Ex M at 4.) The court further finds that Gorski did not prove that he was domiciled in Florida in 2005. He did not show that he contemporaneously intended to abandon his Oregon domicile and establish a new domicile in Florida.
Although Gorski took many steps required for establishing a permanent residence in Florida, he filed his original income tax return as a full time Oregon resident. It is possible that he filed that return in error, but its filing is credible, objective evidence of Gorski's contemporaneous intent. Gorski has provided conflicting explanations for his original departure from Oregon. Furthermore, Gorski retained many connections to Oregon while in Florida. Taxpayers seeking to establish domicile in another state must "perform the duties and avail [themselves] of the privilege of a citizen in the community of one's new residence * * *."Elwert, 196 Or at 269. That was not done. Now, therefore, *Page 14 
IT IS THE DECISION OF THIS COURT that the appeal is denied.
Dated this ___ day of November 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Jeffrey S. Mattsonon November 24, 2010. The Court filed and entered this documenton November 24, 2010.
[1] Gorski's co-worker, Joe Reis, informed him that Reis' experience was that his employer lowered wages after employees had signed contracts to purchase homes. (Id.)
[2] Neither Texas nor Florida tax personal income at the state level.
[3] All references to the Oregon Revised Statutes (ORS) and the Oregon Administrative Rules (OAR) are to 2005, unless otherwise noted.
[4] ORS 316.027(a) states,
 "(a) `Resident' or `resident of this state' means:
 "(A) An individual who is domiciled in this state unless the individual:
 "(i) Maintains no permanent place of abode in this state;
 "(ii) Does maintain a permanent place of abode elsewhere; and
 "(iii) Spends in the aggregate not more than 30 days in the taxable year in this state; or
 "(B) An individual who is not domiciled in this state but maintains a permanent place of abode in this state and spends in the aggregate more than 200 days of the taxable year in this state unless the individual proves that the individual is in the state only for a temporary or transitory purpose."
ORS 316.027(a) (emphasis added).
[5] The etymology of the word domicile is of interest in this case. Domicile derives from the Latin domicilium, ordomus, meaning house. Webster's Third New Int'lDictionary 671 (unabridged ed 2002). During the trial, taxpayer, by his own admission, misspoke, stating that he returned "home" in 2005 when he moved back to Oregon.
[6] ORS 305.427 states,
 "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief and the burden of going forward with the evidence shall shift as in other civil litigation."
[7] Taxpayers did not include a copy of the actual certificate, and because Gorski made that statement in closing argument, it was not subject to cross examination. As such, the court will give it appropriate weight.