IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

JEREMY D. SMITH                          )
and ERICA D. SMITH,                      )
                                         )
          Plaintiffs,                    )     TC-MD 160018R
                                         )
     v.                                  )
                                         )
DEPARTMENT OF REVENUE,                   )
State of Oregon,                         )
                                         )
          Defendant.                     )     **FINAL DECISION**[1]

Plaintiffs appeal Defendant's Notice of Deficiency Assessment dated October 20, 2015,

for the 2013 tax year. A trial was held in the courtroom of the Oregon Tax Court on April 14,

2016, in Salem, Oregon. Erica Smith (Erica)[2] appeared on behalf of Plaintiffs. Erica Smith and

Jeremy Smith (Jeremy) testified on behalf of Plaintiffs. Nicholas Odom (Odom) appeared and

testified on behalf of Defendant. Plaintiffs' Exhibits 1 and 2 were received without objection.

Defendant's Exhibits A through L were received without objection.

## I. STATEMENT OF FACTS

Defendant issued its Notice of Deficiency Assessment alleging that Plaintiffs were

domiciled in Oregon for the 2013 tax year, filed a part-year resident return (form 40P) instead of

a full-year return (form 40), and erred by taking a credit on their Oregon return for taxes paid to

Arizona. Plaintiffs assert they were not domiciled in Oregon for all of 2013 and thus were

correct in filing a part-year resident return.

---

[1] This Final Decision incorporates without change the court's Decision, entered August 24, 2016. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

[2] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's Decision recites facts and references to two individuals with the same last name, Smith. To avoid confusion, the court will use the first name of the individual being referenced.

Jeremy testified that he has been working as a manufacturing technician for Intel since 2001. In 2012, Plaintiffs lived in rental housing in Oregon. Plaintiffs did not own a car; they borrowed Erica's family van for transportation. In June 2012, Jeremy mentioned to his wife that Intel was offering employees the opportunity to transfer to Arizona with moving expenses paid by the company. Jeremy was interested in the prospects of more autonomy at work and both Plaintiffs were interested in the lower housing costs. Jeremy applied for and accepted a transfer from Oregon to Arizona beginning in mid-August 2012. Plaintiffs planned to purchase a house in Arizona but first wanted to lease until they were acclimated to the new area. Plaintiffs engaged a real estate agent in Arizona and signed a one-year lease on a house in Chandler Arizona beginning on August 10, 2012. (Def's Ex. H at 1.) Plaintiffs enrolled their children in school and Jeremy purchased and registered, in Arizona, a motor scooter to get to work so Erica could use the van to take the children to school. Plaintiffs enrolled their children in soccer and dance programs. Neither Plaintiff registered to vote in Arizona because it was not a priority and they were focused on the relocation. Jeremy and Erica both testified that they did not obtain Arizona driver's licenses because their Oregon licenses had not yet expired. Plaintiffs reasoned that it would cost them time and money to change their licenses and were unaware of the legal requirements to do so. Plaintiffs filed a part-year resident Oregon return for the 2012 tax year.

Jeremy testified that in March 2013 the Arizona Intel location began a process of voluntarily separating some of its workforce. He became worried about the security of his position in Arizona. Several months later, Jeremy became aware of a program to relocate back to the Oregon Intel location. Jeremy applied, was accepted, and started working back in Oregon in August 2013. Because the transfer was done so quickly, Jeremy moved first, worked for a month, and then returned to Arizona to help move the family back to Oregon. Jeremy's

employer provided a letter stating that his move to Arizona had been considered a permanent move. Jeremy testified that Plaintiffs took a credit on their Oregon return for taxes paid to Arizona because that is how the software on the tax program he used set up the transaction.

Erica testified that she was raised in Oregon and her family also lives here. In 2012, she and Jeremy decided to accept a work transfer from Oregon to Arizona. Erica moved temporarily from the house Plaintiffs were renting into her grandparents' house in Oregon. They forwarded the mail there until they could establish a new home in Arizona. After they rented a house in Arizona, they had their mail forwarded to them in that state. Erica testified that it was difficult to move their family with three kids and a newborn, and would not have done so if Jeremy's job in Arizona was only temporary. Erica testified she intended to stay in Arizona for at least five years. Erica registered her children for school in Arizona for the fall 2013 term, but withdrew them after she and Jeremy decided to return to Oregon.

## II. ANALYSIS

Oregon imposes a state income tax on every resident of this state and every nonresident with Oregon-source income. ORS 316.037(1), (3).[3] Oregon defines a "[r]esident" as "[a]n individual who is domiciled in this state unless the individual: (i) Maintains no permanent place of abode in this state; (ii) Does maintain a permanent place of abode elsewhere; and (iii) spends in the aggregate not more than 30 days in the taxable year in this state * * *." ORS 316.027(1)(a)(A). Thus, residency is statutorily equated with domicile. Domicile is a common law concept composed of two components: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." *dela Rosa v. Dept. of Rev.* (*dela Rosa*), 313 Or 284, 289, 832 P2d 1228 (1992) (citation omitted). Oregon Administrative

---

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

Rule (OAR) 150-316.027(1)(1)(a)[4] defines "[d]omicile" as "the place an individual considers to be the individual's true, fixed, permanent home" and as "the place a person intends to return to after an absence." Although an individual can have more than one residence, he or she "can have but one domicile." *dela Rosa*, 313 Or at 289 (citation omitted). Plaintiffs have the burden of proving by a preponderance of the evidence that they had "effected a change of domicile" from Oregon to Arizona in 2012 and were not domiciled in Oregon for the full 2013 tax year. *See* ORS 305.427.

A.    *Domicile*

The issue before the court is whether Plaintiffs changed their domicile from Oregon to Arizona in 2012. To effect a change of domicile, "three elements are necessary: (1) the person must establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile." *White v. Dept. of Rev.*, 14 OTR 319, 321 (1998). Given the inherent difficulties in ascertaining intent, "triers of the fact of domicile rely heavily upon the overt acts of the individual as true indicators of his state of mind. Nevertheless, the whole aim of the inquiry is to discern the true intent." *Hudspeth v. Dept. of Revenue* (*Hudspeth*), 4 OTR 296, 298-99 (1971). Thus, "determination of an individual's domicile is based on intent supported by facts and circumstances rather than merely the statements of the individual[.]" *Butler v. Dept. of Rev.*, TC-MD No 050801D, WL 2041284 at *4 (July 18, 2006). Factors contributing to a determination of domicile "include family, business activities[,] and social connections[.]" OAR 150-316.027(1)(1)(a).

/ / /

/ / /

---

[4] Unless otherwise noted, all references to the Oregon Administrative Rules (OAR) are to 2013.

1.      *Residence in Oregon and Arizona*

"[A] residence for purposes of the [three-part] test is simply an abode. * * * [A]n abode is any 'physical building, structure, or vehicle in which the taxpayer lives and sleeps.' " *Bleasdell v. Dept. of Rev.*, 18 OTR-MD 354, 361 (2004). There is no dispute that Plaintiffs had established a residence in Oregon prior to 2012, moved to a new residence in Arizona in August 2012, and reestablished Oregon residency in August 2013.

2.      *Intent to abandon Oregon domicile/ Intent to acquire an Arizona domicile*

Plaintiffs request that the court conclude that they intended to abandon Oregon as their domicile in 2012 and acquire Arizona as their new domicile. Plaintiffs also ask the court to find they were part-time residents of Arizona and part-time residents of Oregon in the 2013 tax year.

This court has previously held that lingering connections to one state do not prevent the court from concluding that a taxpayer effected a change in domicile. In *Hudspeth*, the taxpayers were absent from Oregon for 16 months; "did not sell their home in Prineville, [Oregon], [] the husband continued his Oregon Elks Lodge membership, [] his Oregon voting registration remained on the books, [] he maintained a bank account in Prineville, [] he paid dues at the golf club in Prineville, [] he purchased no home in * * * New Mexico, and made use of a mobile home in * * * Colorado." *Hudspeth*, 4 OTR at 299. The taxpayer-husband in *Hudspeth* testified that he had tried to sell his Oregon home but found no takers, that he "did not vote by absentee ballot during his absence," and that he "had no time to take care of or give consideration to minor matters such as shifting bank accounts, cutting down on dues payments, and the like[.]" *Id.* at 300. The court accepted his explanations and concluded that the taxpayers had effected a change of domicile. *Id.* at 301.

/ / /

To be sure, Plaintiffs held lingering connections to Oregon. Plaintiffs' extended family resided in Oregon and they had no such connections in Arizona. Plaintiffs retained their Oregon driver's licenses and remained registered to vote here. Additionally, Erica testified that the family was planning to stay in Arizona for at least five years; implying an eventual return to Oregon. Despite those lingering connections to Oregon they established an intent to change their domicile to Arizona. Plaintiffs signed a one-year lease of a home in Arizona, started their children in school and extra-curricular sports, purchased a motor scooter registered in Arizona, transferred their bank account, and established a "permanent" transfer of employment to Arizona. Plaintiffs explained that the difficulty in moving with four children, one of whom was a newborn, and their lack of knowledge of the law led them to believe that obtaining a new state driver's license was not necessary until their Oregon licenses expired. They also explained their lack of time and general interest as the reason for failing to register to vote. Plaintiffs' decision to rent for a year to get to know the area is understandable, as is their failure to register the van they were driving as it belonged to Erica's father. Defendant did not dispute the letter from Intel explaining that Jeremy's transfer from Oregon to Arizona was considered a permanent move. Defendant uses hindsight to show that the move was not actually permanent. However, intent is best viewed under the circumstances as Plaintiffs were experiencing them. The court in Hudspeth stated: "Intent must be determined as to each step of the attempted change in domicile as taken; hindsight is to be regarded with suspicion." *Id*. at 301. There is nothing in the record to show that Plaintiffs planned to stay in Arizona for such a short period of time. Rather, a better explanation given Plaintiffs' testimony, was they changed plans based on the perceived stability and security of Jeremy's job. Plaintiffs presented persuasive testimony that they intended to abandon their Oregon domicile in August 2012 and reestablished it when they moved back to

Oregon in August 2013. Thus, the court finds they were correct in filing a partial year resident return for the 2013 tax year.

B.     *Credit for Taxes Paid to Arizona*

ORS 316.082 provides in pertinent part:

"(1) A resident individual shall be allowed a credit against the tax otherwise due under this chapter for the amount of any income tax imposed on the individual * * * for the tax year by another state on income derived from sources therein and *that is also subject to tax under this chapter.*"  (Emphasis added)

Plaintiffs took a credit on their Oregon return for taxes paid to Arizona. That credit was in error because they were not taxed in Oregon on their Arizona income. Therefore, Plaintiffs were not entitled to a deduction for income taxes paid to another state.

## III.  CONCLUSION

After careful review and consideration of the evidence presented, the court finds that Plaintiffs were partial-year Oregon residents in 2013. The court also finds that Plaintiffs were not entitled to a deduction for taxes paid to Arizona for the 2013 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs were partial-year Oregon residents in 2013.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

IT IS FURTHER DECIDED that Defendant shall recalculate Plaintiffs' 2013 tax liability accounting for Plaintiffs' residence status and eliminating the credit for taxes paid to Arizona.

Dated this ____ day of September 2016.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was filed and entered on September 13, 2016.*