No. 3            August 28, 2012            15

IN THE OREGON TAX COURT
REGULAR DIVISION

Charles W. DANE
and Louise A. Dane,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5000 & 5023)

Plaintiffs (taxpayers) appealed from a Magistrate Division decision ruling that declared taxpayers' domicile was in Oregon. Following trial the court found that based on the record presented at trial, taxpayer's continuing ties to Oregon indicated that taxpayer did not abandon his Oregon domicile and establish a new domicile in Nevada prior to the start of 2007, or at any time during the 2007 or 2008 tax years, and therefore his domicile was in Oregon.

Trial was held September 16, 2011, in the courtroom of the Oregon Tax Court, Salem.

Charles W. Dane, Plaintiff, argued the cause for Plaintiffs (taxpayers) *pro se*.

Darren Weirnick, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision for Defendant rendered August 28, 2012.

**HENRY C. BREITHAUPT, Judge.**

### I.    INTRODUCTION

These cases come before the court for decision following a trial in the Regular Division. Plaintiffs (taxpayers) appeal from notices of proposed refund adjustments issued by Defendant Department of Revenue (the department). Taxpayers argue that Plaintiff Charles W. Dane (Charles)[1]

---

[1] Opinions and orders of the Oregon Tax Court typically avoid referring to litigants by their first names. In this instance, however, taxpayers are husband and wife and share a last name. For purposes of this opinion, the court will refer to taxpayers by their first names when referring to either taxpayer as an individual, and as "taxpayers" when referring to the couple collectively.

was a nonresident of the state of Oregon during the 2007 and 2008 tax years.

Taxpayers also appealed an adjustment to the amount of taxpayers' income that could be deducted from taxpayers' income for the 2007 tax year due to expenses incurred by taxpayer for the maintenance of a house in Waldport, Oregon, that taxpayer owns and uses in connection with taxpayers' property rental business. However, at trial the department conceded this issue with respect to 2007 only.

## II.  FACTS

These cases are the most recent in a series of cases that taxpayers have litigated in this court concerning Charles' residency status in the tax years following 1999. Information presented by these parties pertaining to tax years other than 2007 and 2008 is relied upon only to the extent that (a) it was included in the record for these Regular Division cases by the parties; and (b) it sheds light on the issue of taxpayer Charles W. Dane's residency during either the 2007 or the 2008 tax years.

Taxpayer Charles W. Dane moved to Oregon in 1948 intending to attend Oregon State University (OSU) and to remain in Oregon indefinitely. After graduation, Charles joined the faculty of OSU, first as a professor of forestry and subsequently teaching several courses related to business administration. Charles worked as a professor of business administration at OSU until his retirement in 1994. Taxpayer remained an emeritus professor at OSU at the time of the trial in this case.

In 1957, Charles married taxpayer Louise A. Dane (Louise). Taxpayers have two daughters, one of whom lives in Indiana. Taxpayers' other daughter, Linda, lives in Stateline, Nevada, where she has lived since the 1980s. Taxpayers have four grandchildren, three of whom live with their mother in Indiana. The fourth grandchild, Kyle, lives in Nevada with his mother, Linda. Kyle's father passed away in December of 2006.

In 1969, taxpayers acquired a 2,200 square foot single family house in Corvallis, Oregon. Taxpayers continued

to own this house at the time of the trial in this case. Taxpayers also own several housing units in Waldport, Oregon, all but one of which they have continuously held as rental housing from 1968 to the time of the trial in this case. For much of this time the actual management of taxpayers' rental properties was left to an outside property management firm. This arrangement ceased in September of 2003, and since that time taxpayers have personally handled the selection of tenants and collection of rents. Taxpayers also performed the majority of the maintenance on the rental units. The one housing unit not held as a rental property (the 910 Waziyata house) was primarily used by taxpayers when they visit the coast to attend to the upkeep of the other units.

In 1993 taxpayers' daughter Linda was diagnosed with Multiple Sclerosis (MS). In 1994, Charles took early retirement from his position at OSU and began spending a substantial proportion of his time at Linda's house in Stateline, Nevada. At Linda's house Charles had exclusive use of one bedroom and shared use of the common areas. At about this time taxpayer also moved some of his personal possessions—mostly preferred or heirloom furniture, clothing, and tools—into Linda's house. Charles claims that he "gifted" all of the furniture and his personal property remaining in taxpayers' house in Corvallis to Louise. There is, however, no documentation of this "gift" in the record.

In mid-1999 taxpayers learned that Linda was pregnant. At about this time, Charles surrendered his Oregon land surveyor's license and his Oregon professional engineer's license. Taxpayer also (a) applied for and obtained a Nevada driver's license, (b) surrendered his Oregon driver's license, and (c) registered to vote in Nevada. Charles did not, however, obtain any professional licenses in Nevada. Charles obtained a library card in Nevada in September of 2000, and starting in 2003 Charles was registered to receive health care at a Veteran's Administration (VA) clinic in Gardnerville, Nevada. During the 2007 and 2008 tax years, however, Charles received much of his medical care, and all of his dental and vision care, from providers located in either Corvallis or Albany, Oregon.

At about the same time that Charles obtained his Nevada driver's license, he also registered an automobile in his name in Nevada. Louise has several automobiles registered in her name in Oregon, including a work van used by taxpayers when performing maintenance on their rental properties in Waldport. In May of 1999 taxpayers owned one vehicle in Oregon that was registered in both of their names. Taxpayers sold that vehicle in July of 2000.

Charles has a post office box at the United States Post Office in Stateline, Nevada.[2] Charles receives mail at both the house in Corvallis and at his post office box in Stateline. Taxpayers receive all mail pertaining to their rental units in Waldport at the house in Corvallis because Waldport does not have street delivery.

Most of the utilities for taxpayers' house in Corvallis and for their rental properties in Waldport were in Louise's name during 2007 and 2008. Charles paid the electric bill for Linda's house in Stateline. Linda, however, paid all other utilities.

Charles has fairly limited social connections in both Oregon and Nevada. Charles' only relative living in Oregon is his sister-in-law, Louise's sister, who lives in Oregon City. Charles is also a member of several Oregon-based social and charitable organizations, though taxpayers argue that he is not active with any such organizations and that many of his memberships are lifetime memberships acquired while Charles was both living and working in Oregon. In Nevada Charles is close with his daughter, Linda, and is active in his grandson Kyle's upbringing. Charles has few social attachments in Nevada outside of this somewhat limited sphere. However, in late 2007 Charles was appointed to the Douglas County, Nevada, Parks and Recreation Commission to serve a two year term starting in 2008. Charles attended five of the six meetings of the commission that were actually held during the year 2008.

---

[2] The United States Postal Service provides residents of Stateline, Nevada, with free post office boxes for at least part of the year because street delivery is impracticable during winter conditions.

At trial, Charles testified that he spent roughly 175 days in Oregon in 2007 and between 115 and 130 days in Oregon in 2008. Taxpayers' rental diaries for the 910 Waziyata house indicate that the house was in use for 116 nights in 2007 and 68 nights in 2008. At trial Charles testified that he was the primary user of the 910 Waziyata house, though Louise stayed with him there often as well.

Taxpayers state in their briefing that when he was in Nevada, Louise was usually there with him. The department does not dispute this asserton. The parties have stipulated, however, that Louise was a resident of Oregon during the 2007 and 2008 tax years.

In July of 2009, taxpayers acquired a house in Minden, Nevada. Taxpayers assert that at the time of the purchase taxpayers had been looking to buy real property in the vicinity of Stateline for some time, but had been deterred up to that point by high real estate prices.

Taxpayers timely filed an Oregon form 40N—an individual income tax return for nonresidents—for the 2007 tax year. On this return, taxpayers identified all of their income as Oregon-source income. Taxpayers' initial return also indicated that taxpayer owed a relatively small additional "tax to pay" on top of the estimated tax payments made throughout 2007. In August of 2008 taxpayers filed an amended form 40N. On this amended return taxpayers significantly reduced the proportion of their income identified as Oregon-sourced income on the grounds that Charles was a resident of Nevada in 2007, and claimed a modest refund.

Likewise, taxpayers timely filed an Oregon form 40N for 2008. Taxpayers' original 2008 Oregon income tax return again shows 100 percent of taxpayers' income as Oregon-source income and a moderate amount of additional "tax to pay" in excess of taxpayers' estimated tax payments and withholding for 2008. In August of 2009 taxpayers, as they had done in 2008, filed an amended form 40N showing a dramatic reduction in the proportion of Oregon-sourced income. This time, however, claiming a significant refund— substantially all of taxpayers' withholding and estimated tax payments.

In both 2008 and 2009—following taxpayers' filing of amended Oregon income tax returns for the 2007 and 2008 tax years, respectively—the department issued notices of proposed refund adjustments, denying taxpayers' claim for a refund for 2007 entirely and significantly reducing taxpayers' claimed refund for 2008. In each instance taxpayers requested a conference, and following the conference the department issued a conference decision upholding the department's determinations. In proceedings before the Magistrate Division, the magistrate concluded that Charles was an Oregon resident during 2007. *Dane v. Dept. of Rev.*, TC-MD No 100440D (Feb 2, 2011). Taxpayers appealed that decision to the Regular Division. Following taxpayers' appeal of the 2007 tax year to the Regular Division, the Judge of the Oregon Tax Court specially designated taxpayers' appeal of the 2008 tax year for hearing in the Regular Division.

### III.   ISSUE

Initially, these cases presented two issues. In addition to the conflict over Charles' domicile outlined in the facts section above, the department had also disallowed certain exclusions from gross income claimed by taxpayer in the 2007 tax year for amounts related to the upkeep of the 910 Waziyata house. At trial the department conceded on the issue of these upkeep expenses.

Therefore, the only issue before the court is whether Charles was a resident of Oregon during the 2007 and 2008 tax years.

### IV.   ANALYSIS

ORS 316.037(1)(a)[3] imposes a "tax * * * on the entire taxable income of every resident of this state." ORS 316.037(3) likewise imposes a "tax * * * on the taxable income of every full-year nonresident that is derived from sources within this state."[4]

---

[3]  All references to the Oregon Revised Statutes (ORS) are to the 2007 edition.

[4]  ORS 316.037(2) likewise imposes a tax "for each taxable year upon the entire taxable income of every part-year resident" of Oregon. However, neither the department nor taxpayers argue that Charles could have been a part-year resident of Oregon, as that term is defined in ORS 316.022(5).

ORS 316.027(1) states, in pertinent part:

"(a)     'Resident' or 'resident of this state' means:

"(A)     An individual who is domiciled in this state unless the individual:

"(i)     Maintains no permanent place of abode in this state;

"(ii)     Does maintain a permanent place of abode elsewhere; and

"(iii)     Spends in the aggregate not more than 30 days in the taxable year in this state[.]"

The conditions of ORS 316.027(1)(a)(A)(i) to (iii) are conjunctive. That means that the failure of a person domiciled in Oregon to meet any one of these three conditions makes that person a resident of Oregon.

A.     *ORS 316.027(1)(a)(A)(i) to (iii)*

The court first turns to ORS 316.027(1)(a)(A)(i) to (iii). At trial Charles testified that he spent roughly 175 days in Oregon in 2007 and between 115 and 130 days in Oregon during 2008. This obviously exceeds the 30 day grace period provided in ORS 316.027(1)(a)(A)(iii). As a result, Charles does not meet at least one of the conditions described in ORS 316.027(1)(a)(A)(i) to (iii). Therefore, this case turns on whether Charles was domiciled in Oregon during the tax years 2007 and 2008.

B.     *Charles' domicile in 2007 and in 2008*

The term "domicile" is not defined in Oregon's tax statutes. However, the term is commonly defined as:

"The place at which a person has been physically present and that the person regards as home; a person's true, fixed, principal, and permanent home, to which that person intends to return and remain even though currently residing elsewhere."

*Black's Law Dictionary* 523 (8th ed 1999.) Everyone has a domicile, and an individual can only have one domicile at any one time. *Zimmerman v. Zimmerman*, 175 Or 585, 591, 155 P2d 293 (1945). In order to change domicile, an individual must (a) intend to abandon that person's former

domicile and acquire a new one; and (b) actually acquire a new domicile. *Davis v. Dept. of Rev.*, 13 OTR 260, 264 (1995). The intent to abandon an old domicile and to acquire a new one must be a present intent. *Oberhettinger v. Dept. of Rev.*, 4 OTR 62, 64 (1970). That means that it cannot be contingent on some other occurrence or an intention merely to settle in a new place at some uncertain point in the future. *Id.*

The parties have stipulated that when Charles moved to Oregon in 1948 he intended to remain in Oregon indefinitely. At that point Charles became an Oregon domiciliary. In order to succeed in taxpayers' appeal with regard to the 2007 tax year, taxpayers must show that some time prior to the start of the 2007 tax year Charles formed a present, unequivocal intent to abandon his domicile in Oregon and then, in fact, acquired a new domicile in Nevada. Taxpayers must show this by a preponderance of the evidence. ORS 305.427. This means that on the record before the court taxpayers must show that it is more likely than not that Charles abandoned his domicile in Oregon and acquired a new domicile in Nevada prior to the beginning of 2007. In order to prevail as to the 2008 tax year, taxpayers must make the same showing, but with regard to the beginning of 2008, rather than 2007.

Because an intention to abandon one domicile and to establish another elsewhere is purely subjective, simple testimony from an individual as to his or her individual intent at any given time will not satisfy the burden of proof. *Hudspeth v. Dept. of Rev.*, 4 OTR 296, 298-99 (1971). Rather, the court must look at the objective circumstances surrounding Charles' activities prior to, during, and—to some extent—after, the 2007 and 2008 tax years and determine whether the circumstances surrounding those activities support taxpayers' contention that Charles intended to abandon his domicile in Oregon and establish a new one in Nevada. *Id.*

In their closing argument, taxpayers point to Charles' retirement from his post at OSU in 1994 and his surrender of his engineering license and land surveying license in 1999 as evidence of Charles' abandonment of his Oregon domicile.

The court agrees that Charles' retirement and relinquishment of his professional licenses are important life steps and certainly represent a decision not to pursue his previous occupations in Oregon. However, the court does not agree that Charles' retirement, as such, evidences an abandonment of Charles' Oregon domicile. While the record does support a conclusion that Charles retired from OSU to spend time caring for Linda, the record also contains statements from Charles that until May of 1999—roughly five years after his retirement from OSU—Charles continued to spend roughly 40 percent of his time at the 910 Waziyata house. This sort of continued, consistent presence in Oregon after retiring from OSU is inconsistent with the notion that Charles abandoned his Oregon domicile when he retired from OSU.

Likewise, while Charles' surrender of his land surveying and engineering licenses certainly represented an important step in Charles's life, Charles surrendered these licenses only after he had been retired for five years. Further, it is not clear whether at the time Charles surrendered his licenses, these licenses were of any practical use to him. In a document submitted into the record by taxpayers, Charles states that he had effectively ceased working as an engineer or as a land surveyor in 1986. Furthermore, while in the same document Charles states that his professional licenses were useful in qualifying Charles to give expert testimony, there is no evidence in the record showing that Charles ever used his licenses for that purpose—or if he did so, to what extent.

Finally, Charles did not acquire replacement credentials to work as either an engineer or as a land surveyor in Nevada, which he might be expected to do if his professional licenses were still of any use to him. In short, the evidence in the record relating to Charles' surrender of his professional licenses is consistent with the notion that Charles had retired. Surrendering his licenses to practice his past professions in Oregon is less evidence of abandoning Oregon than evidence of abandoning his past professions.

In taxpayers' favor, Charles' social ties during the 2007 and 2008 tax years lean somewhat in the direction of a determination that Charles was domiciled in Nevada.

The presence of Linda and Kyle in Nevada is certainly an important consideration. While the parties have stipulated that Louise was a resident of Oregon during the 2007 and 2008 tax years, taxpayers argue, and the department does not dispute, that Louise was usually physically present wherever Charles was also physically present at any given point in time—whether this was in Nevada, Oregon, or elsewhere. The court therefore does not give the stipulation by the parties that Louise was a resident of Oregon in 2007 and 2008 any particular weight in determining Charles' domicile during those years.[5] The court also gives some consideration to the fact that Charles was registered to vote in Nevada; was appointed to the Douglas County, Nevada, Parks and Recreation Commission and appears to have been actively engaged in the business of that commission.

Taxpayer's acquisition of a house in Minden, Nevada, in July of 2009 is also a factor weighing in favor of a conclusion that Charles had abandoned his Oregon domicile. However, because taxpayers did not purchase this house until well into 2009, the court gives this factor no weight in determining Charles' intentions in 2007 and only very little weight in determining Charles' intentions in 2008. The record contains statements from both Charles and Louise to the effect that taxpayers had been looking for a property to purchase or to acquire by exchange for several years, but had been discouraged by high real estate prices. The court has no reason to doubt these assertions, but in the absence of any evidence showing the extent of taxpayers' efforts prior to July of 2009, the court must conclude that prior to this time taxpayers had only formed an intention to acquire real property in Nevada at some point in the future when it would be convenient to do so.

_____

[5] The court has in the past determined that it is unlikely that one spouse would change his or her domicile unless the other spouse did so as well. *Davis v. Dept. of Rev.*, 13 OTR 260, 264-65 (1995). However, unlikely is not impossible, and given the subjective nature of domicile it is possible that one spouse might consider time spent in a new location as a permanent relocation, while the other might view it only as a temporary sojourn. Who is in the right might only be knowable in retrospect. In any event, Louise's physical presence in Nevada while Charles was also physically present in Nevada distinguishes the cases currently before the court from cases like *Davis* where a change of domicile by only one spouse would have entailed acceptance of indefinite and substantial physical separation.

On direct examination, Louise stated that taxpayers were primarily in Nevada to help take care of their grandson, Kyle. This is an understandable—and a commendable—motivation. Louise's statement does, however, imply that but for the need to help take care of Kyle, taxpayers would still most likely have been spending most of their time in Oregon, as they did before learning that Linda was pregnant in 2000. This impression is further supported by Charles' statement under cross-examination to the effect that it was convenient for taxpayers to bring Kyle with them to Oregon when he was not in school because taxpayers could care for him while also taking care of their properties in Oregon. The upshot is that taxpayers were in Nevada because Kyle was in Nevada; not because of anything particular about Nevada as such.

In a sense, these statements by Charles and Louise evidence a contingent intent to establish a new domicile in Nevada—contingent, that is, on Linda and Kyle being in Nevada. However, the court understands that given Linda's long-time residency in Nevada, taxpayers could safely assume that Kyle would remain in Nevada. That distinguishes this case from others, wherein the court has found against taxpayers on the basis of a contingent intent to abandon one domicile and to establish another. *See*, *e.g.*, [*Gorski v. Dept. of Rev.*](#), 20 OTR 452 (2012) (intent to abandon Oregon domicile and to establish domicile elsewhere contingent on finding work after completing professional qualification); *Oberhettinger v. Dept. of Rev.*, 4 OTR 62 (1970) (intent to abandon Oregon domicile and to establish domicile in District of Columbia contingent on reconciliation with estranged spouse). The contingency involved here is not fatal to taxpayers' case, but it does weigh somewhat against a finding that Charles intended to abandon his Oregon domicile and to establish a new domicile in Nevada.

Taxpayer's real property holdings in Oregon—and more specifically, the manner of Charles' involvement with taxpayers' real estate holdings in Oregon—are the deciding factor in this case. In 2007 and 2008, taxpayers' real property holdings consisted of taxpayers' family home in Corvallis and of taxpayers' rental properties in Waldport. Taxpayers had owned these properties since 1969 and 1968,

respectively. Of these properties, taxpayers' rental properties constituted the strongest link between Charles and Oregon during the 2007 and 2008.

In their briefing, taxpayers seek to minimize Charles' continuing ties to Oregon by emphasizing that Charles' stays in Oregon during 2007 and 2008 were primarily for the purpose of maintaining and managing taxpayers' rental units in Waldport. In the court's opinion, Charles' active role in managing and maintaining these rental properties actually tends to strengthen the argument that Charles had not abandoned his Oregon domicile. Charles' maintenance and management duties required him to be physically present in Oregon for a substantial proportion of each year—including the years at issue in this case—and further led taxpayers to set aside the 910 Waziyata house for Charles and Louise to live in while working at their rental properties. In other words, taxpayers' rental properties in Waldport—and more specifically, Charles' active role in managing and maintaining these properties—required Charles to maintain a consistent physical presence in Oregon and to set up the infrastructure necessary to sustain that presence. These facts weigh heavily against the notion that Charles had abandoned his Oregon domicile.

Taxpayers' retention of their house in Corvallis during 2007 and 2008 also weighs in favor of the notion that Charles remained domiciled in Oregon. There is no direct evidence in the record regarding the extent of Charles' use of this house during 2007 and 2008. However, the record shows that Charles was in Oregon for 175 days in 2007 and for 115-130 days in 2008. Taxpayers' rental diaries indicate that Charles was at the 910 Waziyata house for 116 nights in 2007 and 68 nights in 2008. That leaves 59 days in 2007 and 47-62 days in 2008 where Charles was physically present in Oregon but not at the 910 Waziyata house. In the absence of evidence that Charles was elsewhere in Oregon on these unaccounted-for nights, the court concludes that he was most likely at taxpayers' house in Corvallis.

Taxpayers also appear to have stored personal property, such as furniture and household items, at their house in Corvallis. In a document taxpayers submitted as an

exhibit in this case, taxpayers allege that Charles "gifted" all the furniture and personal property that he did not bring with him to Stateline, Nevada, or to Waldport. There is no indication in the record as to what subsequently became of that furniture and personal property, so the court must presume that a substantial part of it remained at the house in Corvallis during the 2007 and 2008 tax years.

The court does not give particular credence to the notion that Charles "gifted" his interest in this property to Louise in any meaningful fashion. Charles' testimony is the only evidence for this "gift" in the record. There is no evidence in the record that by making this "gift" to Louise, Charles lost the use of any of his property, except perhaps for some clothing that he gave Louise permission to dispose of. Taxpayers' argument appears to be an effort to avoid whatever perceived problems that could arise for taxpayers' case if certain of Charles' personal effects and other household items that taxpayers had acquired as a couple were found to remain in taxpayers' house in Corvallis. The continued presence of this property in Oregon during 2007 and 2008 would, of course, tend to weigh against a conclusion that Charles had abandoned his Oregon domicile.

In the past this court has concluded that an individual may cease to be a domiciliary of Oregon despite retaining some connections to Oregon. In *Hudspeth v. Dept. of Rev.*, 4 OTR 296 (1971), the court held that a taxpayer's domicile had changed when he and his family moved from Prineville, Oregon, to Albuquerque, New Mexico, for the purpose of taking over his family's failing timber concern. *Hudspeth*, 4 OTR at 301. The court reached this conclusion despite taxpayer's continuing ownership of a house in Prineville and even though dues payments to a Prineville golf club and a Prineville-area lodge of the Benevolent and Protective Order of Elks were made from the taxpayer's account at a Prineville bank after the taxpayer had left Oregon. *Id.* at 299. In *Hudspeth*, however, the taxpayer had attempted— unsuccessfully—to sell his house and the dues payments were made by the taxpayer's family comptroller without any affirmative action on the part of the taxpayer. *Id.* at 300. The court also appears to have been swayed by unusually

compelling testimony from the taxpayer in that case and his witnesses. *Id.* at 301.

Here, unlike in *Hudspeth*, Charles appears to have voluntarily perpetuated his ties to Oregon. There is no evidence in the record indicating why taxpayers' business relationship ceased with the property management company that had previously managed taxpayers' rental units in Waldport. We do know, however, that since that relationship ceased Charles has spent a substantial part of his time in Waldport every year attending to those properties, and that he did so in both 2007 and 2008. There is no evidence in the record that taxpayers have ever sought to sell their rental units or have ever sought to find another property management company to oversee these properties.

Likewise, there is no indication in the record that taxpayers ever sought to sell their home in Corvallis. This is particularly noteworthy given taxpayers' assertions that despite her stipulated status as an Oregon resident during 2007 and 2008, Louise has been physically present with Charles the majority of the time since Charles' purported abandonment of his Oregon domicile in mid-1999. While the court does not necessarily consider taxpayers' retention of their house in Corvallis to be evidence of a positive intention by Charles to return to Oregon and resume living in taxpayers' house in Corvallis on a permanent basis, it does weigh against a finding that Charles had abandoned his Oregon domicile.

In short, during 2007 and 2008, Charles had ties to both Oregon and Nevada. Taken on the whole, however, Charles' continuing ties to Oregon during these tax years were such that the court cannot conclude that Charles abandoned his Oregon domicile either before or during 2007 or 2008, respectively.

## V.   CONCLUSION

Given taxpayers' history of litigating Charles' Oregon residency, it is clear that Charles no longer wishes to be considered a resident of Oregon. However, based on the record presented at trial, Charles did not abandon his Oregon domicile and establish a new domicile in Nevada

prior to the start of 2007, or at any time during the 2007 or 2008 tax years. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff Charles W. Dane was a resident of Oregon during the 2007 and 2008 tax years.