No. 29 June 20, 2013 211

## IN THE OREGON TAX COURT
## REGULAR DIVISION

John R. BALLARD,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5136)

Plaintiff (taxpayer) appealed a Magistrate Division decision as to income tax. Taxpayer retired from the United States Postal Service (USPS) and was paid a lump sum payment from terminal annual accrued leave. Taxpayer asserted that the terminal annual leave payment was earned by work performed outside of Oregon and therefore no part of it was taxable by Oregon. Defendant (the department) argued that the terminal annual leave payment was entirely income from Oregon sources for taxpayer and subject to taxation in Oregon. Following trial, the court found that pursuant to USPS rules, the relevant statutes and the administrative rules, the department's application of its rule in this instance did not address payments made in respect of leave earned in more than one year, and concluded that its reading would produce unexplained and unexplainable different results by considering the entire period over which the deferred benefit was earned and would be inconsistent with the other areas in the department rule. The court thereby devised an adjustment calculation for parties to follow as to the correct allocation of refund and interest to taxpayer.

Trial was held March 25, 2013, in the courtroom of the Oregon Tax Court, Salem.

John R. Ballard, Plaintiff (taxpayer), argued the cause *pro se*.

Nathan Carter, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant Department of Revenue (the department).

Decision for Plaintiff rendered June 20, 2013.

**HENRY C. BREITHAUPT, Judge.**

### I. INTRODUCTION

This personal income tax case is before the court after trial. Most of the facts were established by stipulation. The year at issue is 2009. Defendant Department of Revenue (the department) has denied a refund requested by Plaintiff (taxpayer) for 2009.

## II.   FACTS

Taxpayer worked for many years for the United States Postal Service (USPS). From 1978 to 1997 he worked in Oregon. From 1997 to July of 2006 taxpayer worked in Vancouver, Washington. From July of 2006 to January 31, 2007, taxpayer worked in Boise, Idaho. From February 1, 2007, to the end of his career with the USPS, taxpayer worked in Oregon. Taxpayer was a resident of Washington from 1997 and continued to be such at the time of the trial in this case.

In 2009 taxpayer worked 20 days within Oregon and no days outside of Oregon. Following his retirement, the USPS paid taxpayer a lump sum amount, a terminal leave payment, representing, in part, accumulated annual leave. The department maintains that the terminal annual leave payment is entirely income from Oregon sources for taxpayer and subject to taxation in Oregon. Taxpayer maintains that the terminal annual leave payment was earned by reason of services performed outside of Oregon and therefore no part of it is taxable by Oregon.

As has been noted, taxpayer worked outside of Oregon prior to returning to Oregon in February of 2007. The taxpayer's evidence indicates that he had maximum accumulated annual leave of 560 hours when he relocated from Boise to Oregon in 2007. All parties agree that during the years 2007 and 2008 taxpayer would have earned 208 hours of annual leave in each year. The record also indicates that while working in Oregon in 2007, taxpayer took eight hours of annual leave in excess of his regular yearly allowance of 208 hours of annual leave. This resulted in an ending balance in the account of 552 hours at the end of 2007. That account balance was then credited with unused annual leave of eight hours awarded during taxpayer's service in Oregon in 2008 so as to produce a maximum account balance of 560 hours at the end of 2008.

Perhaps because accumulated terminal leave payment amounts are computed based on the final salary level of an employee of the USPS, no regulation or rule exists that specifies the year in which accumulated hours in an employee's account were earned. Therefore it is not possible to infer, solely from the year in which annual leave was earned, the

location of the work that led to the right to such annual leave. The court concludes, however, that on the particular facts of this case, it is possible to reach conclusions where the service by taxpayer that produced the balance in his accumulated leave account at the beginning of 2009 must be considered to have been rendered.

In understanding this and other points, it is helpful to summarize some of the provisions of Stipulated Exhibit G, rules of the USPS relating to annual leave (the Rules). A "leave year" is a year beginning with the first day of the first complete pay period in a calendar year. Rule § 512.12(a). Employees are credited with a number of hours to which they are entitled for the upcoming leave year. Rule § 512.311. "Current leave" is leave that an employee earns by biweekly pay periods during the current leave year. Rule § 512.12(c). "Accrued leave" is leave that is earned but unused at any point during the current leave year. Rule § 512.12(d). "Accumulated leave" is defined to be "the total unused leave that remains to the credit of the employee at the beginning of any leave year." Rule § 512.12(b). The "maximum carry-over amount" of leave is "maximum amount of previously accumulated annual leave with which an employee may be credited *at the beginning of a year.*" Rule § 512.321 (emphasis added). The amount is determined based on the status of the employee. Rule § 512.321.

Taxpayer earned 208 hours of vacation each year for the years following 1990. Prior to 1990 taxpayer earned 156 hours of vacation per year. The maximum amount of leave that could be accumulated by taxpayer was 240 hours for periods prior to 1990 and 560 hours for periods thereafter.

The lump sum terminal leave payment is the "*accumulated* annual leave *carried over from the previous year*, plus the *accrued* leave for the current year, plus hours for any holiday that falls within the terminal annual leave period. Rule § 512.732(a).[1] Nothing in the Rules indicates

---

[1] The terminal annual leave period is the number of days following separation from service during which the terminal annual leave amount would have been paid out if it was paid for days of service rendered. This concept is important because if the terminal annual leave period includes one or more recognized holidays, an additional payment is due.

how annual leave that is taken is charged against *accrued* as opposed to *accumulated* annual leave.

Viewing the Rules as a whole, however, the court finds that they operate such that *accumulated* leave from the earliest year earned remains in the accumulation account, subject to being augmented by later accumulated leave, layered onto the oldest *accumulated* leave. Any balance existing at the beginning of a year may also be reduced if leave in that year exceeds the annual allowance or current leave. If an unfilled layer exists in the account, it is filled, in whole or in part, with the next carryover amount. However, once an account has reached its maximum, nothing is added to that account unless and until some portion of the accumulated leave is used. Thereafter, if unused leave is generated, it is then added to the accumulation account.[2]

The foregoing conclusion is primarily driven by the definition of "accumulated leave" and the focus of that definition on the accumulated amount being leave that was *previously* earned, and *remained in the account and unused at the beginning of a new leave year*. The definition describes a layering on approach. It does not suggest that currently earned but unused leave is added to an account without regard to the level of the account at the beginning of the leave year.[3]

Applying the finding of the court as to the operation of the USPS Rules to the particular facts in the record regarding taxpayer, the following emerges, as graphically illustrated in Appendix 1:

(1)   The balance in taxpayer's accumulation account when he came from Idaho to Oregon was 560 hours. Some,

---

[2] Nothing in the Rules addresses whether any reduction in the accumulation account comes from the oldest accrued hours or the most recently accrued hours. However, that does not present an issue in the case because, as will be shown, the oldest hours in taxpayer's account were "Oregon hours," as was the only addition to the account occurring after taxpayer most recently worked in Oregon.

[3] Taxpayer has argued that one of the Rules, dealing with an option to cash in leave awards for an upcoming year has something to say as to how the accumulation account is to be analyzed. *See* Rule § 512.631. Under this Rule, leave for an upcoming year can be cashed in but accumulated leave and accrued leave may not be exchanged for cash. Those provisions do not appear to the court to be relevant and, in any case, nothing in the record indicates that the taxpayer ever availed himself of the cash exchange rule.

or all, of that amount could possibly have been earned and placed in the accumulation account by reason of service of taxpayer in Oregon from 1978 to 1997. The record made by taxpayer does not foreclose that possibility, beyond a reasonable doubt, and, because taxpayer bears the burden of proof, the total account balance of 560 hours cannot, without more, be considered "non-Oregon" hours;

(2)  The record made by taxpayer does, however, show an accumulation account balance at the beginning of 2001 of 168 hours. At that point, taxpayer was working in Washington and had been doing so for some time. However, the record does not foreclose the possibility that those hours had been added to the account during the period of service by taxpayer in Oregon from 1978 to 1997. Therefore, given that taxpayer has the burden of proof, those 168 hours must be considered "Oregon" hours;

(3)  Additions to the accumulation account above the 168 hours existing at the beginning of 2001 were produced by service of taxpayer in Washington and Idaho. That service brought the accumulation account to its maximum level of 560 hours, the level at which it stood when taxpayer began his most recent period of service in Oregon in February of 2007. However, because that Oregon service could not, except as discussed in (4) below, add to the "maxed out" accumulation account, the 392 hours (representing the difference between the maximum number of 560 and the starting point, on this record, of 168 hours) must be considered to have been earned outside of Oregon and treated as "non-Oregon" hours;

(4)  The 392 "non-Oregon" hours must, however, be reduced by the eight hours of excess leave taken by taxpayer in 2008. The extra leave created an unfilled layer of eight hours that was filled with eight hours attributable to work in Oregon during 2008; and

(5)  Of the 560 hours in the accumulation account as of the beginning of 2009, therefore, 384 (392 − 8) were "non-Oregon" hours and 176 (168 + 8) were "Oregon" hours.

Taxpayer's terminal leave payment was calculated on a number of hours in excess of the 560-hour amount found in the accumulation account. That excess was, in accordance

with the Rules, attributable to leave earned during 2009 in the amount of 16 hours and holiday pay of eight hours that taxpayer would have earned in connection with Oregon service had he not retired.

## III.   ISSUE

The issue in this case is whether or to what extent the terminal leave payment to taxpayer in 2009 was Oregon source income subject to the Oregon Personal Income Tax.

## IV.   ANALYSIS

ORS 316.037(3) imposes a tax on the income of nonresidents "from sources within this state."[4] ORS 316.127(1) goes on to include in such income, items of income that are "derived from or connected with sources in this state." The statute looks to the source of income items of a nonresident and does not subject those items to taxation simply because a taxpayer has income from other sources in Oregon in the year in question.

In its interpretive rules, the department has stated rules for treatment of compensation for personal services. These rules generally acknowledge the statutory requirement of a source connection or place of derivation requirement of the statute. Thus, in the simplest case, it is clear that if a nonresident works both within and without Oregon in any given year, Oregon only subjects to taxation the portion of the compensation for the year attributable to work within Oregon. *See* OAR 150-316.127-(A)(1)(a) ("[T]he gross income of a nonresident (who *** receives compensation for services as an employee) includes compensation for personal services only to the extent that the services were performed in this state.").

This case involves work in several years, and in several states, that served as a basis for and created for taxpayer a right to receive a payment made to him in 2009. In such situations, the department's rules generally acknowledge that, for nonresidents, the same allocation to Oregon sources must be made. Thus, in the case of nonqualified stock options without readily ascertainable value at the time

---

[4] All references to the Oregon Revised Statutes (ORS) are to 2009.

granted, where time passes between the grant of the option (the "grant"—a nontaxable event) and the exercise of the option (the "exercise"—a taxable event), the department's rule provides that where the employee has worked both in and outside of Oregon during that period, the only income subject to taxation in Oregon is a portion of the income from exercise of the option. The portion is computed by multiplying the total gain by a fraction, the numerator of which is the number of days worked in Oregon during the period of time between the grant and the exercise. The denominator of the fraction is the number of days worked everywhere between the grant and the exercise. OAR 150-316.127-(A)(3)(d)(B).

Similarly, in the case of unemployment compensation received by a nonresident and attributable to work performed both in Oregon and other states, the benefits are taxable *only to the extent they pertain to work in Oregon*. OAR 150-316.127-(A)(3)(e). The department's rule goes on to say that the taxable portion is determined under any method that reasonably reflects services in Oregon.

The same approach is taken in the department's rules with respect to severance pay. That is defined in the rule as a payment on severance based on length of service. Contemplating that such period of service might have occurred in Oregon and also in other states, the department rule again calls for a proration of the amount of severance pay attributable to Oregon. And again, the proration is to be on any method that reasonably reflects the amount of service in Oregon. OAR 150-316-(A)(3)(f).

With respect to vacation pay, the department rule states:

"(c)   Total compensation for personal services includes sick leave pay, holiday pay, and vacation pay. Sick leave days, holidays, and vacation days are not considered actual working days either in or out of this state and are to be excluded from the calculation of the portion of total compensation for personal services taxable to this state.

"**Example 5:**   Joan is a nonresident of Oregon. She actually worked a total of 220 days during the year and was paid for 40 non-working days (holidays, sick days and

vacation days). She worked 110 days in Oregon. Her compensation (including compensation for holidays, sick leave and vacations) was $26,000. She would figure her compensation subject to Oregon tax as follows:

"Days worked in Oregon—divided by—Total days worked x Total compensation = Oregon compensation 0.500 (110 days divided by 220 days) x $26,000 = $13,000

"Joan's compensation subject to Oregon tax is $13,000."

OAR 150-316.127-(A)(3)(c).

Based upon this rule, and this rule alone, the department argues that the entire amount paid to taxpayer by the USPS based on the balance in the accumulated annual leave account is taxable in Oregon.[5] To reach this result the department simply observes that taxpayer worked 20 days in Oregon in 2009 and no days elsewhere. Deriving a factor of 1.0 under its rule, the department concludes that all of the payment for accumulated leave is subject to Oregon tax.

This position of the department has a number of problems. First, it reads more into its rule than the rule contains. The department reads into the rule a clause stating to the effect: "without regard to the basis on which, or where, any accrued or accumulated vacation pay was earned." But, of course, those words are not in the rule. The rule simply does not address anything other than payment of vacation pay during one year in which Joan worked inside and outside of Oregon. It does not purport to address what the result should be if a payment is made in respect of leave earned in more than one year.

The second problem with the department's reading of its rule is that such reading produces unexplained and unexplainable different results. For persons who receive vacation pay over the course of one year while working both in Oregon and in places outside of this state, the amount of that vacation pay that is taxable in Oregon is only a fraction determined by the relative amount of time worked in Oregon compared with the amount of time worked outside

---

[5] The court notes that this rule is interpretive in character and not adopted pursuant to specific legislative authority.

of Oregon. However, for persons who, by contract with their employer, receive payment at the end of a period of several years for vacation credit earned while serving that employer both inside and outside of this state over the course of that period, taxability for that accrued vacation pay is determined entirely based on a fraction calculated for only the last year of the period. This differential treatment, which finds no basis in the statutes or even in the other rules of the department in this area, is easily eliminated by simply extending the period for which the ratio is calculated so that it reflects the location of services over the entire period that is relevant to the payment.[6]

That approach, giving consideration to the entire period over which a deferred benefit is earned, would be entirely consistent with the other areas in the department rule. Note that where other benefits are earned by service in multiple states over multiple tax periods, the department rule specifies that the relative service over the entire period of service and the location of service during that period are to be considered. Thus, multi-state and multi-period service is collectively considered with respect to certain stock options, severance pay and unemployment compensation. The department offers no coherent reason as to why payment of benefits accumulated over time in respect of annual leave should not be similarly treated.[7]

A coherent explanation is required for several reasons. First, all of the department rules are interpreting the

---

[6] The department's reading of its rule would in some situations produce absurd and unnecessary results. If a taxpayer worked entirely outside of Oregon for several years, accumulating a vacation account of 560 hours and then worked in Oregon for one day in the next year before retiring, the department's construction of its rule would lead to taxation of the entire payment for accumulated leave. This type of result would not only be absurd—a result to be avoided—it would also present serious constitutional concerns. *See Stonebridge Life Ins. Co. I v. Dept. of Rev.*, 18 OTR 423 (2006). All such problems are easily avoided by simply determining, where possible, the location where the work was performed that produced any balance in the accumulation account.

[7] To be clear, there is nothing offensive with that portion of the department rule on vacation pay that does not count any such vacation days in making the work in Oregon/work out of Oregon calculation. However, that calculational point, relating to what is a "work" day, cannot be read as permitting one to disregard the fact that vacation allowances only exist by reason of actual work performed. It is the ratio of Oregon and non-Oregon situs of such work days that must be given effect.

same basic statutory provisions that look to the extent to which services are performed in Oregon—and only to that extent—in determining what amount is subject to tax. A coherent and consistent result can be obtained by simply observing that the rule as it currently exists only addresses a one year period and must be supplemented, when multiple periods are involved, with a calculation identical to that used for certain stock options, severance pay and unemployment compensation. That supplement would be to allow any allocation method that determines the extent to which the payment pertains to work in Oregon by a method that reasonably reflects service in Oregon as compared with service in all states.

The scope of the reading that the department gives to its rule results in the rule being inconsistent with the governing statutory scheme. That scheme subjects to taxation only compensation to the extent that the work performed to produce the payment was performed in Oregon. That reading of the statute also avoids serious problems that would arise under the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States if compensation earned in other states was subjected to taxation in Oregon. *See* footnote 5 above.

The department has argued that a construction of the rule that takes into account the location of work that leads to the accumulated leave benefit would be administratively cumbersome and should, therefore, not be adopted. To this argument there are two answers. First, administrative difficulty cannot justify adherence to an interpretive rule that is inconsistent with the governing statute or a constitutional concern. Second, the other rules that the department has issued, under the very same statute, with respect to severance pay, certain options and unemployment compensation have exactly the same operative elements and involve the same level of complexity. Further, the department insists that nonresidents and their employers keep track of the location of work or service, even when only one year is involved, as that is the fundamental basis for the taxation of compensation of nonresidents. The administrative difficulty argument of the department is not well taken.

## V.   CONCLUSION

Given the findings of fact of the court as to the operation of the USPS Annual Leave Rules and the calculation of the terminal annual leave payment made to taxpayer, the amount of that payment attributable to work in Oregon and subject to Oregon taxation is:

(1)   176/560ths of the amount of payment for 560 hours of accumulated leave as of the beginning of 2009, this being the sum of the 168 "Oregon" hours used as a starting point in 2001 and the 8 "Oregon" hours that "topped up" the accumulation account during 2008; plus

(2)   All of the amount of payment attributable to the 24 hours of pay for the leave and holiday allowance attributable to 2009.

Now, therefore,

IT IS THE DECISION OF THIS COURT that the parties are directed to compute the appropriate amount of refund and interest due to Plaintiff based on the foregoing and submit a form of judgment. The court will separately address any disagreement that may arise as to the calculations or form of judgment. Costs are awarded to Plaintiff.

## APPENDIX 1



| Year | Location | Hours |
|------|----------|-------|
| 2001 | WA       | 168   |
| 2002 | WA       | *200* |
| 2003 | WA       | *300* |
| 2004 | WA       | *400* |
| 2005 | WA       | *450* |
| 2006 | WA/ID    | *475* |
| 2007 | ID/OR    | 560   |
| 2008 | OR       | 552   |
| 2009 | OR       | 560   |

*Numbers in bold italics are hypothetical*
*All years are shown as of January 1 of each year*