IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

|  |  |  |
|---|---|---|
| ALDO FERNANDEZ and ALISON JACKSON, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 190277R |
| v. | ) ) | |
| DEPARTMENT OF REVENUE, State of Oregon, | ) ) ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's Notice of Assessment, dated April 26, 2019, for the 2015

tax year. A trial was held in the Oregon Tax Court on June 18, 2020. Aldo Fernandez

(Fernandez) appeared and testified on behalf of Plaintiffs. Plaintiff, Alison Jackson (Jackson),

Dawn Manso (Manso), and Dennis Guido (Guido) testified on behalf of Plaintiffs by video

conference. Sandi Palafox appeared by telephone on behalf of Defendant. Plaintiffs' Exhibits 1

to 3 were admitted without objection. Defendant's Exhibits A to M were admitted without

objection.

## I.  STATEMENT OF FACTS

Fernandez started working as store manager for Vitamin World in South Lake Tahoe,

California in 2006. When that location closed in 2007, Fernandez and his family moved to

Oregon where he worked as a store manager at his employer's Eugene location. Fernandez and

his wife, Jackson, obtained Oregon driver's licenses in 2007. (Ex I at 1; Ex K at 1.) Over the

next several years, Plaintiffs' daughter attended public school and their son was born in Eugene.

On September 26, 2014, Fernandez was promoted to district manager for the northern California

district and received a substantial salary increase. Fernandez testified that Plaintiffs did not want

DECISION  TC-MD 190277R                                                                 1

to leave Oregon but felt that moving would be the best financial choice for their family. At the time of the promotion, Plaintiffs were renting a home on Jefferson Street in Eugene where they had been living since 2011. (*See* Ex 3 at 1.)

Manso was Fernandez's direct supervisor at the time of his promotion. She testified that she was responsible for making the job offer and filling out the personnel forms. She testified that the district manager position was not a temporary position. Manso testified that, in her experience, a payroll change form would have been filled out and sent electronically. She also testified that any subsequent changes would be made electronically. Plaintiffs submitted two versions of a handwritten document memorializing the promotion and payroll change. The "location" portion of the form reads "OR Remote" on one and "CA Remote" on the other. (Ex 1.)[1] Manso also testified that, as a district manager, Fernandez would have worked from a home office. If that were not feasible, Manso explained that he could work from the backroom of one of the stores in his district. Manso testified that Fernandez would initially live in Oregon while working in California but that she expected him to relocate to his district as soon as possible. She stated that Vitamin Word paid Plaintiffs' expenses to relocate to California.

Fernandez testified that for the first few months in his new position he commuted to California on a weekly basis and would either drive or fly back to Oregon on the weekends to be with his family. On December 30, 2014, Plaintiffs signed a month-to-month lease for a house in Davis, California. (Ex 3 at 13.) The lease term was until August 31, 2015. (*Id.* at 8.) Plaintiffs testified that they began living in California on January 1, 2015. Plaintiffs' daughter was registered in the California public school system on January 14, 2015. (Ex 2 at 1.) Dallas Jackson and Dennis Guido are listed as Emergency Contacts on the registration printout. *(Id.* at

---

[1] It is not clear which form is original, however, it is not crucial to the court's decision in this case.

2.)  The home address listed on her student profile is in Davis, California, but the mailing address is Oak Street in Eugene.  (*Id.* at 1.)  The printout is dated December 19, 2019.  (*Id.*)

Jackson testified that she was a stay-at-home mom and took their son to speech therapy. Fernandez and Jackson both said that while they were in California, they did not join any groups or organizations.  Fernandez testified that Jackson's uncle lived in California and helped them move.  Dallas Jackson is listed as Plaintiffs' emergency contact/nearest relative on their California lease application.  (Ex 3 at 1.)  Plaintiffs' witness Dennis Guido testified that he was Jackson's uncle and had visited them in their home in Davis, California and understood that they would be staying in California indefinitely.

Fernandez testified that he was given multiple company vehicles to use for his job and that, to his recollection, those cars had California license plates.  Fernandez obtained a California I.D. card in May 2016.  (Ex H.)  Fernandez testified that he did get a California driver's license but did not provide a copy or his California DMV records.  Plaintiffs testified that Jackson also obtained a California I.D. card.  Jackson testified that both her and Fernandez needed the cards to purchase medical marijuana.  Fernandez testified that flying to Disneyland for a family vacation would require a valid I.D. which he did not have.  Oregon DMV records indicate Fernandez's Oregon driver's license was not set to expire until February 4, 2019.  (Ex I at 1.)  Fernandez testified that he could not recall why he needed a California I.D. but speculated that he might have lost the old one.[2]

On January 29, 2016, Jackson renewed her Oregon driver's license.  (Ex K at 1.)  Jackson testified that because she needed a new driver's license and was nervous about taking another

---

[2] It appears that Fernandez had an Oregon I.D. card in addition to his Oregon driver's license.  (Ex I at 1.) Fernandez's Oregon I.D. card expired February 4, 2015.  (*Id.*)

test; she opted to renew her Oregon driver's license instead of obtaining a California driver's license. To renew her Oregon driver's license, Jackson traveled from California to Oregon and used a friend's address in Eugene, Oregon on her application. (*Id.*)

Near the end of 2016, Fernandez testified that he became aware of an opening for a district manager position in Oregon that would allow the family to move back to Eugene. He decided to pursue that opportunity and Plaintiffs testified that they returned to Oregon, with the intent to remain, by December 1, 2016. Plaintiffs testified that when they moved back to Eugene, they lived on Oak Street for one year. Plaintiffs testified that, when they learned that their former rental on Jefferson Street was available, they reached out to their landlord and moved back to that location.

Fernandez's federal gross earnings for 2015 was $75,347 of which $43,613 was reported as California wages; the other $31,734 was attributed to Oregon. (Ex B at 1; Ex F at 2.) Fernandez claims this was an error. Fernandez testified that he tried to reach out to Vitamin World to get more information, but because the company underwent multiple changes in management and filed for bankruptcy, he found them uncooperative. Fernandez testified that the Payroll Change Form was the only information he received from his employer. (Ex 1.) He testified that it was delivered as a single page in an envelope without any other correspondence in response to his subpoena.

Defendant sent Plaintiffs a Notice and Demand to File for the 2015 tax year on March 12, 2019. (Ex A.) Plaintiffs requested more information from Defendant about the Demand to File. In response, Defendant sent a letter on March 20, 2019, stating that Plaintiffs still need to file an Oregon return because "[o]ur information shows that you received wages payable to the State of Oregon from Vitamin World in the amount of $31,734. The federal wage amount is $75,347, the

difference appears to be the amount of the W-2 you provided showing wages payable to the State of Oregon." (Ex B.) Plaintiffs argue that the assessment should be reversed because they neither lived nor worked in Oregon in 2015. (Compl at 1.) Defendant asserts that the assessment should be sustained either because Plaintiffs were Oregon residents in 2015, or alternatively, had Oregon-source income in 2015.

## II. ANALYSIS

The issue before the court is whether and on what basis Plaintiffs are subject to Oregon personal income tax for the 2015 tax year.

Oregon imposes a personal income tax on every resident of this state. ORS 316.037(1), (3).[3] Oregon also imposes a tax on nonresidents and part-year residents with Oregon-source income. ORS 316.117(1); ORS 316.127(1). The court will first consider whether Plaintiffs were Oregon residents during 2015 and then, if necessary, consider whether they income attributable to sources within this state.

A.    *Whether Plaintiffs Were Oregon Residents in 2015*

A resident is defined as "[a]n individual who is domiciled in this state unless the individual: (i) Maintains no permanent place of abode in this state; (ii) Does maintain a permanent place of abode elsewhere; and (iii) Spends in the aggregate not more than 30 days in the taxable year in this state[.]" ORS 316.027(1)(a)(A). Residency, therefore, is statutorily equated with domicile. *dela Rosa v. Dept. of Rev.*, 313 Or 284, 289, 832 P2d 1228 (1992) (explaining how "[t]he legislature has made 'resident' status the determining factor but has defined 'resident,' in part, by reference to 'domicile.'").

/ / /

_____

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2013 unless otherwise stated.

Domicile is a common-law concept comprised of two components: (1) "a fixed habitation or abode in a particular place" and (2) "an intention to remain there permanently or indefinitely." *Id.* at 289. Oregon Administrative Rule (OAR) 150-316-0025(1)(a) defines domicile as "the place an individual considers to be the individual's true, fixed, permanent home" and as "the place a person intends to return to after an absence."

A change in domicile is a question of fact that the taxpayer has the burden of proving by a preponderance of the evidence. *See* ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer[s] will have failed to meet [their] burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). To effect a change of domicile, "three elements are necessary: (1) the person must establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile." *White v. Dept. of Rev.*, 14 OTR 319, 321 (1998).

1. *Whether Plaintiffs established a residence in another place*

The first element needed to prove a change in domicile is to show that Plaintiffs "establish[ed] a residence in another place." *White*, 21 OTR at 321. A residence or abode "signifies a building or shelter which is the dwelling place of a person." *Ramsey v. Dept. of Rev.*, 7 OTR 478, 481 (1978). Plaintiffs established a residence in California when they signed a month-to-month lease for a house. *See Butler v. Dept. of Rev.*, TC-MD 050801D, 2006 WL 2041284 at *4 (Or Tax M Div Jul 18, 2006) (presenting evidence of renting an apartment is sufficient to establish residence). However, maintaining a residence outside of Oregon is not enough to establish a domicile for "an individual may have several residences (or abodes), but only one domicile, at any given time." *Id.*

2.      *Whether Plaintiffs intended to change domicile*

"Because an intention to abandon one domicile and to establish another elsewhere is purely subjective, simple testimony from an individual as to his or her individual intent at any given time will not satisfy the burden of proof." *Dane v. Dept. of Rev.*, 21 OTR 15, 22 (2012). Intent must be determined by overt acts, facts, and circumstances, rather than the self-serving statements of the individual. *Hudspeth v. Dept. of Rev.*, 4 OTR 296, 301 (1971). "[T]he whole aim of the inquiry is to discern the true intent." *Id.* at 299. "The evidential value of each act must be measured with caution, since, in many cases, no particular act is wholly persuasive on either side of the argument." *Id.* (internal citations omitted). "Actions which require the individual to make a conscious decision and declare their status" are "stronger evidence of the person's choice or state-of-mind." *White*, 14 OTR at 323-23. "The intent to change domicile or to acquire a new domicile must be a present intent and not conditioned upon some future event or contingent event." *Davis v. Dept. of Rev.*, 13 OTR 260, 264 (1995). Important factors that help reveal the individual's intended domicile include family, business activities, and social connections. OAR 150-316-0025(1)(a).

a.      Lease

The leasing of an apartment in California for their personal residence provides objective evidence to support Plaintiffs intent to establish a new domicile. Plaintiffs testified that they did not maintain a residence in Oregon during the relevant tax year but provided no other evidence. Defendant also did not present any evidence on this point. During the relevant tax year, it appears that Plaintiffs had one residence, located in California. This strongly suggests an intent to abandon their Oregon domicile. *See* ORS 316.027(1)(a)(A) (an individual who maintains no permanent place of residence in the state and spends less than 30 days in the taxable year in the

state is not a resident.)[4]

      b.     DMV Registration and Driver's Licenses

Under California law, "[a]pplication to register [a] vehicle shall be made within 20 days after gainful employment is accepted in this state or residency is established in this state." Cal. Veh. Code § 6700(a). Plaintiffs never registered their personal vehicle in California. A person also has ten days from the date he or she establishes residence in California to obtain a California driver's license. Cal. Veh. Code § 12502(a)(1). Furthermore, "[A] person shall not operate a motor vehicle for employment in [California] after establishing residency without first obtaining a license from the department." Cal. Veh. Code § 12505(c). No evidence was presented that Plaintiffs ever obtained California driver's licenses aside from Fernandez self-serving testimony that he did obtain a California driver's license.

In the past, this court has found that compliance with another state's laws regarding licensing of motion vehicles "do not necessarily show a conscious decision to change domicile." *Butler,* 2006 WL 2041284 at *5. Plaintiffs testified that they became California residents by January 1, 2015. However, because California vehicle registration and licensing requirements are contingent on residency, Plaintiffs' failure to do so suggests that they did not intend to be California residents.[5]

Defendant presented evidence purporting to show that Jackson went to great lengths to renew her Oregon driver's license in January 2016, even though it was not set to expire until

---

[4] No evidence was presented regarding how many days of the year Plaintiffs spent in Oregon.

[5] Fernandez's employment demanded a significant amount of driving. He testified that he was given multiple company vehicles to use for his job and that, to his recollection, those cars had California license plates. If Fernandez did not obtain a California driver's license during his employment, it is very likely a violation of California law.

2023.[6] The suggestion is that this is the type of voluntary act that shows Jackson never intended to abandon her Oregon domicile. However, the relevant tax year is 2015. "Intent must be determined as to each step of the attempted change in domicile as taken; hindsight is to be regarded with suspicion. Overt acts are significant as they are related to the particular time." *Hudspeth*, 4 OTR at 301. Jackson's decision to renew her license in 2016 is not necessarily indicative of her intent in 2015. The timing of the act, occurring *before* Plaintiffs knew they would be returning to Oregon for Fernandez's work, does suggest that she never intended to sever her connection to Oregon.[7]

Defendant's argument that Jackson voluntarily renewed her license in 2016 that was not set to expire until 2023 is not supported. Exhibit K shows the current license expiration date of February 20, 2023, but an original issue date of July 10, 2007. Under Oregon law, original driver's licenses expire after nine years and renewal licenses after eight years. ORS 307.130. The original issue date suggest that Jackson's Oregon license expired sometime in 2016. The expiration date presented by Defendant likely shows the current license expiration date. This lessens the voluntariness of the act and its persuasive significance but provides some support for Jackson's objective intent.

---

[6] Jackson did not explain what documentation she provided to the DMV, but she apparently misrepresented her current address on her application. "[T]o be eligible for a driver license or permit issued by this state a person must be domiciled in or resident of this state." ORS 807.062(1). Obtaining a license in Oregon requires proof of current address which may include, but is not limited to, providing a utility bill, tax return, or lease agreement. ORS 807.050(1). Instead of listing her address in California, where she was living at the time, Jackson testified that she listed the address of a friend in Eugene, Oregon.

[7] *See White*, 14 OTR at 321. In some instances, an act can be interpreted "more as an oversight than a conscious decision," such as when a taxpayer retains his Oregon license and voter registration and leaves an Oregon address on an LLC agreement that he "never thought to change." *Brueske v. Dept. of Rev.*, TC-MD 090020D, 2010 WL 724425 at *5, *8 (Or Tax M Div Mar 3, 2010). In *Bentley v. Dept. of Rev.*, TC-MD 170094R, 2018 WL 1003567 at *4 (Or Tax M Div Feb 21, 2018), this court found that it was "understandable that [the taxpayers] did not attend to relatively minor matters, like updating their voter registrations, driver's licenses, or bank account," but only because they endured "a torrent of crisis which demanded their full attention." Such is not the case here.

Plaintiffs testified that they obtained California I.D. Cards. Fernandez presented a copy of his California I.D. issued on May 18, 2016. No corroborating evidence was presented to show that Jackson ever obtained a California I.D. Plaintiffs gave conflicting testimony regarding the purpose of the I.D. Cards, particularly why Fernandez went to the trouble of obtaining a California I.D. Card instead of California driver's license.[8] However, the court finds the evidence that Fernandez obtained a California I.D. after the tax year at issue of little persuasive value in determining his intent in 2015.

c.     Payroll change form, W2, and tax returns

In *Sage v. Dept. of Rev.*, TC-MD 060574C, 2007 WL 1660764 at *9 (Or Tax M Div June 5, 2007), the court found the fact that taxpayer voluntarily withheld Oregon income tax from his wages to be persuasive evidence that he intended to retain his Oregon domicile. *See also Ott v. Dept. of Rev.*, 16 OTR 102, 109, 112 (withholding Oregon state tax was one of many objective facts supporting an Oregon domicile). Defendant reports that Vitamin World withheld Oregon income tax on a portion of Plaintiff's income. (Ex F at 2.) Fernandez disputes whether he affirmatively requested Oregon income taxes withheld asserting that his employer withheld Oregon taxes in error. But he did not provide his Oregon W-2, W-4 form or 2015 tax returns or any other evidence to support this assertion. Even if the employer was mistaken, Plaintiffs had a duty to correct the mistake. When an employer has issued an incorrect Form W-2, the IRS advises taxpayers to request a corrected Form W-2 from their employer or, if that fails, to file Form 4852. Plaintiffs' lack of diligence in addressing Fernandez's withholding is of no help to them and does not support an intent to establish a new domicile in California.

---

[8] It appears that Fernandez maintained an Oregon I.D. in addition to his Oregon driver's license. (Ex I at 1.) Fernandez's Oregon I.D. was set to expire February 4, 2015, and was not renewed. (Ex I at 1; Ex J at 1.)

d.      Connections in California

Relocating to a certain locale for work alone is not enough to show domicile. *See e.g. Butler*, 2006 WL 2041284 at *6 (court held that the fact that taxpayer lived and worked in Virginia was not enough where her spouse and permanent residence remained in Oregon).  The court has in the past determined that it is unlikely that one spouse would change his or her domicile unless the other spouse did so as well.  *Davis v. Dept. of Rev.*, 13 OTR at 264.  Similarly, the location of children or in the case of younger taxpayers, parents can be determinative.  *Hannegan v. Dept. of Rev.*, TC-MD 110828D, 2012 WL 84568 at * 4 (Or Tax M Div Jan 11, 2012) (holding that young taxpayer retained his "domicile of origin" in Oregon where his parents lived)

Here, Plaintiffs took the step of moving their entire family, including children to California, evidenced by their enrolling their daughter in school there.  It seems unlikely that Plaintiffs intended to retain their Oregon domicile if they relocated the family to California.  The court also notes that, besides Jackson's friend in Oregon whom she visited in 2016, no evidence was presented regarding any family ties in Oregon.  Although Plaintiffs did not join any groups or organizations in California, under Plaintiffs' circumstances, with two young children to care for and Fernandez's new job requiring significant travel, it is understandable that Plaintiffs did not establish social connections.  Dennis Guido, Jackson's uncle testified that he regularly visited at their rental home in Davis, California, or that they would travel to visit him or the other uncle in Pacifica.  The existence of family ties in California for Jackson is another indicator supporting their contention.  The court concludes that the location of family and connections suggests that Plaintiffs intended to change domicile.

/ / /

### 3. *Determination of Plaintiffs' domicile*

Plaintiffs did not take many of the usual steps required to establish long-term residence in California such as obtaining California driver's licenses, registering their vehicles, or registering to vote. *See e.g. Gorski v. Dept. of Rev.*, TC-MD 091291B, 2010 WL 4793821 at *7 (Or Tax M Div Nov 24, 2010) (taxpayer obtained a Florida driver's license, registering his vehicles with the Florida DMV, and purchased Florida car insurance.) However, the combination of work, family, and sole residence all located within California are objective facts that persuade the court that Plaintiffs were domiciled in California in 2015.

### B. *Whether Plaintiffs Had Oregon-Source Income in 2015*

Oregon also imposes income tax on nonresidents who have income "derived from sources within this state." ORS 316.127(1). Nonresident wages are taxable in Oregon "to the extent that the work performed to produce the payment was performed in Oregon." *Ballard v. Dept. of Rev.*, 21 OTR 211 (2013); *see also* OAR 150-316-0165(1)(a) ("the gross income of a nonresident * * * [who] receives compensation for services as an employee[] includes compensation for personal services only to the extent that the services were performed in this state.").

Fernandez was the district manager for the northern California region for Vitamin World in 2015. Manso, his direct supervisor, testified that at least some of his work would be performed remotely. The payroll change sheet, from October 2014, appeared to state that his assigned work location was Oregon remote. Manso and Fernandez both testified that his remote work in Oregon was temporary until he could relocate to his assigned district. This move is corroborated by the lease agreement that Plaintiffs provided, the testimony of Guido, and the registration of Plaintiffs' daughter in the California school district. Taken together, it seems

unlikely that Fernandez was working remotely in Oregon while his family and work were both in California.

Fernandez testified that his employer incorrectly withheld Oregon income tax. As noted above, Plaintiffs had a duty to correct the W-2. The court also is troubled by Plaintiffs' failure to provide their 2015 California returns, W-4 form, or any other evidence having a bearing on this case. Nonetheless, the evidence before the court shows that it is more likely than not that Plaintiffs did not receive any compensation for services performed in this state during 2015.

### III. CONCLUSION

After careful consideration, the court concludes that Plaintiffs were not Oregon residents as defined in ORS 316.027(1) during the 2015 tax year. The court also concludes that Plaintiffs did not have any Oregon-source income in 2015. Now, therefore,

IT IS ORDERED that Plaintiffs' appeal is granted.

Dated this _____ day of October 2020.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at https://www.courts.oregon.gov/courts/tax*

*This document was signed by Magistrate Richard Davis and entered on October 20, 2020.*